Markman, C.J.
**96 *295 At issue here is whether MCL 769.25 violates the Sixth Amendment because it allows the decision whether to impose a sentence of life without **97 parole to be made by a judge, rather than by a jury beyond a reasonable doubt. We hold that MCL 769.25 does not violate the Sixth Amendment because neither the statute nor the Eighth Amendment requires a judge to find any particular fact before imposing life without parole; instead, life without parole is authorized by the jury's verdict alone. Therefore, we reverse the judgment of the Court of Appeals in Skinner and affirm the part of Hyatt that held that "[a] judge, not a jury, must determine whether to impose a life-without-parole sentence or a term-of-years sentence under MCL 769.25." People v. Hyatt , 316 Mich. App. 368, 415, 891 N.W.2d 549 (2016). However, we reverse the part of Hyatt that adopted a heightened standard of review for life-without-parole sentences imposed under MCL 769.25 and that remanded this case to the trial court for it to "decide whether defendant Hyatt is the truly rare juvenile mentioned in [ Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) ] who is incorrigible and incapable of reform." Hyatt , 316 Mich. App. at 429, 891 N.W.2d 549. No such explicit finding is required. Finally, we remand both of these cases to the Court of Appeals for it to review defendants' sentences under the traditional abuse-of-discretion standard of review.
I. FACTS AND HISTORY
A. SKINNER
Following a jury trial, defendant was convicted of first-degree premeditated murder, conspiracy to commit murder, and attempted murder for acts committed *296 when defendant was 17 years old. Defendant was sentenced to life in prison without the possibility of parole. The Court of Appeals remanded for resentencing under Miller , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407, which held that mandatory life-without-parole sentences for offenders under **98 18 years old violate the Eighth Amendment. People v. Skinner , unpublished per curiam opinion of the Court of Appeals, issued February 21, 2013, 2013 WL 951265 (Docket No. 306903). This Court denied leave to appeal. People v. Skinner , 494 Mich. 872, 832 N.W.2d 237 (2013). On remand, the trial court reimposed a life-without-parole sentence. After defendant was resentenced, MCL 769.25 took effect, setting forth a new framework for sentencing juveniles convicted of first-degree murder. The Court of Appeals remanded for resentencing under MCL 769.25. People v. Skinner , unpublished order of the Court of Appeals, entered July 30, 2014 (Docket No. 317892). On remand, the trial court again sentenced defendant to life without parole.
In a split, published decision, the Court of Appeals again remanded for resentencing, holding that a jury must decide whether defendant should be sentenced to life without parole and that, to the extent that MCL 769.25 requires the trial court to make this determination, it is unconstitutional. People v. Skinner , 312 Mich. App. 15, 877 N.W.2d 482 (2015). This Court granted the prosecutor's application for leave to appeal and directed the parties to address "whether the decision to sentence a person under the age of 18 to a prison term of life without parole under MCL 769.25 must be made by a jury beyond a reasonable doubt[.]" People v. Skinner , 500 Mich. 929, 929, 889 N.W.2d 487 (2017).
B. HYATT
Following a jury trial, defendant was convicted of first-degree felony murder, armed robbery, conspiracy to commit armed robbery, and possessing a firearm during the commission of a felony for acts committed when defendant was 17 years old. Following an evidentiary hearing at which the trial court considered the **99 Miller factors, defendant was sentenced to life in prison without the possibility of parole. In a published opinion, the Court of Appeals affirmed defendant's convictions and would have affirmed his sentence but for Skinner , which held that a jury must decide whether to impose a life-without-parole sentence on a juvenile. People v. Hyatt , 314 Mich. App. 140, 885 N.W.2d 900 (2016).
The Court of Appeals declared a conflict pursuant to MCR 7.215(J) and, in a published decision, the conflict panel unanimously disagreed with Skinner and held that a judge may decide whether to impose a nonparolable life sentence on a juvenile. Hyatt , 316 Mich. App. at 415, 891 N.W.2d 549. However, the Court of Appeals reversed defendant's life-without-parole sentence and remanded the case to the trial court for resentencing at which "the trial court must not only consider the Miller factors, but decide whether defendant Hyatt is the truly rare juvenile mentioned in Miller who is incorrigible and incapable of reform." Id . at 429, 891 N.W.2d 549. We directed that oral argument be heard on the prosecutor's application for leave to appeal and instructed the parties to address "whether the conflict-resolution panel of the Court of Appeals erred by applying a heightened standard of review for sentences imposed under MCL 769.25." People v. Hyatt , 500 Mich. 929, 929-930, 889 N.W.2d 487 (2017).
II. STANDARD OF REVIEW
Matters of constitutional and statutory interpretation are reviewed de novo.
*297 People v. Hall , 499 Mich. 446, 452, 884 N.W.2d 561 (2016). In analyzing constitutional challenges to statutes, this Court's "authority to invalidate laws is limited and must be predicated on a clearly apparent demonstration of unconstitutionality."
**100 People v. Harris , 495 Mich. 120, 134, 845 N.W.2d 477 (2014). We require these challenges to meet such a high standard because "[s]tatutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." In re Sanders , 495 Mich. 394, 404, 852 N.W.2d 524 (2014), citing Taylor v. Gate Pharm. , 468 Mich. 1, 6, 658 N.W.2d 127 (2003).
III. BACKGROUND
The issue here involves the interplay between the Sixth and Eighth Amendments of the United States Constitution. The Sixth Amendment provides, in pertinent part:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed.... [ U.S. Const., Am. VI.]
The Eighth Amendment provides:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. [ U.S. Const., Am. VIII.]
Specifically, the issue here is whether Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny require jury findings beyond a reasonable doubt before a sentence of life without parole may be imposed on a person under the age of 18 under MCL 769.25.
MCL 750.316(1) provides, in pertinent part:
Except as provided in sections 25 and 25a of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.25 and 769.25a, a person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life without eligibility for parole:
**101 (a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.
(b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first or second degree under [ MCL 750.145n ], torture under [ MCL 750.85 ], aggravated stalking under [ MCL 750.411i ], or unlawful imprisonment under [ MCL 750.349b ].
MCL 769.25, which was enacted in the wake of Miller , provides, in pertinent part:
(1) This section applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2)....
* * *
(2) The prosecuting attorney may file a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of *298 parole if the individual is or was convicted of any of the following violations:
* * *
(d) Any violation of law involving the death of another person for which parole eligibility is expressly denied under state law.
(3) ... If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after the effective date of the amendatory act that added this section. The motion shall specify the grounds on **102 which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.
(4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, the court shall sentence the defendant to a term of years as provided in subsection (9).
* * *
(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in [ Miller v. Alabama ] and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.
(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.
* * *
(9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.
In People v. Carp , 496 Mich. 440, 852 N.W.2d 801 (2014), this Court noted that
[r]ather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, MCL 769.25 now establishes a default sentencing range for individuals who commit first-degree murder **103 before turning 18 years of age. Pursuant to the new law, absent a motion by the prosecutor seeking a sentence of life without parole,
the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years. [ Id . at 440, 852 N.W.2d 801, quoting MCL 769.25.]
A. UNITED STATES SUPREME COURT PRECEDENT
Apprendi , 530 U.S. at 490, 120 S.Ct. 2348, held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) In other words, any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict " is an "element" that must be submitted to a jury. Id . at 494, 120 S.Ct. 2348 (emphasis added). See also Blakely v. Washington , 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.") (emphasis altered).
In Ring v. Arizona , 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Court held that the jury, rather than the judge, must determine whether an aggravating circumstance exists in order to impose *299 the death penalty.[1] In addition, in Hurst v. Florida , 577 U.S. ----, ----, 136 S.Ct. 616, 619, 193 L.Ed.2d 504 (2016), the Court held that "[t]he Sixth Amendment requires a **104 jury, not a judge, to find each fact necessary to impose a sentence of death" and that "[a] jury's mere recommendation [of a death sentence] is not enough" to satisfy the Sixth Amendment.[2]
Miller , 567 U.S. at 465, 132 S.Ct. 2455, held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " (Emphasis added.) Instead, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id . at 489, 132 S.Ct. 2455 (emphasis added).[3] The Court indicated that the following factors should be taken into consideration: "[defendant's] chronological age and its hallmark features-among them, immaturity, impetuosity, **105 and failure to appreciate risks and consequences"; "the family and home environment that surrounds him-and from which he cannot usually extricate himself-no matter how brutal or dysfunctional"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth-for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation...." Id . at 477-478, 132 S.Ct. 2455. Although the Court declined to address the "alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger," it stated:
But given all we have said in Roper ,[4 ] Graham ,[5 ] and this decision about children's *300 diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Although we do not foreclose a sentencer's ability to make that judgment in **106 homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. [ Id . at 479-480, 132 S.Ct. 2455 (citation omitted).]
Subsequently, in Montgomery v. Louisiana , 577 U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the Court held that Miller applies retroactively to juvenile offenders whose convictions and sentences were final when Miller was decided because Miller announced a new substantive rule by rendering life without parole an unconstitutional penalty for a specific class of juvenile defendants. Id . at ----, 136 S.Ct. at 734 (citation omitted). Montgomery noted that Miller indicated that it would be the "rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified" and that " Miller made clear that 'appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.' " Id . at ----, 136 S.Ct. at 733-734, quoting Miller , 567 U.S. at 479, 132 S.Ct. 2455. On this basis, Montgomery concluded:
Miller , then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " Because Miller determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"-that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [ Id . at ----, 136 S.Ct. at 734 (citations omitted).]
**107 In response to the state's argument that " Miller cannot have made a constitutional distinction between children whose crimes reflect transient immaturity and those whose crimes reflect irreparable corruption because Miller did not require trial courts to make a finding of fact regarding a child's incorrigibility," the Court stated:
That this finding is not required ... speaks only to the degree of procedure Miller mandated in order to implement its substantive guarantee. When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems. See *301 Ford [v. Wainwright , 477 U.S. 399, 416-417, 106 S.Ct. 2595, 91 L.Ed.2d 335] (1986) ("[W]e leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences[.]"). Fidelity to this important principle of federalism, however, should not be construed to demean the substantive character of the federal right at issue. That Miller did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary, Miller established that this punishment is disproportionate under the Eighth Amendment. [ Id . at ----, 136 S.Ct. at 735.]
The Court concluded that "prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." Id . at ---- 136 S.Ct. at 736-737.
B. MICHIGAN COURT OF APPEALS
The Court of Appeals in Skinner held that MCL 769.25 violates the Sixth Amendment because it allows the decision whether to impose a sentence of life **108 without parole to be made by a judge, rather than by a jury beyond a reasonable doubt. The Court of Appeals reasoned that, pursuant to MCL 769.25, "following the jury's verdict and absent a prosecution motion seeking a life-without-parole sentence followed by additional findings by the trial court, the legally prescribed maximum punishment that defendant faced for her first-degree-murder conviction was imprisonment for a term of years." Skinner , 312 Mich. App. at 43, 877 N.W.2d 482. In other words, the jury's verdict only supported a term-of-years sentence. In order to impose a life-without-parole sentence, the trial court has to engage in fact-finding, and this violates defendant's Sixth Amendment right to a jury because any fact that increases a defendant's sentence must be decided by the jury.
The Court of Appeals further held that the statutory maximum penalty for first-degree murder for juveniles cannot be life without parole because this would violate Miller given that, under Miller , a mandatory default life-without-parole sentence for juveniles violates the Eighth Amendment. Miller requires additional fact-finding before a life-without-parole sentence can be imposed. More specifically, Miller requires the trial court to find that the defendant is one of those rare juvenile defendants that is irreparably corrupt and incapable of rehabilitation before the trial court can impose a life-without-parole sentence.
The Skinner dissent, on the other hand, concluded that there was no Sixth Amendment violation because "neither Miller nor the statute sets forth any particular facts that must be found before a sentence of life without parole may be imposed." Id . at 74, 877 N.W.2d 482 ( SAWYER , J., dissenting). The dissent rejected the majority's conclusion that Miller requires a finding of "irreparable corruption" in order for the Eighth Amendment to **109 allow the imposition of a life-without-parole sentence for a juvenile. Id . at 76, 877 N.W.2d 482. It also rejected the majority's conclusion that MCL 769.25 creates a default term-of-years sentence, at least after the prosecutor moves for a life-without-parole sentence. Id . at 77, 877 N.W.2d 482.
In Hyatt , the Court of Appeals agreed with the Court of Appeals dissent in Skinner and therefore declared a conflict with Skinner . The conflict panel also agreed with the Court of Appeals dissent in Skinner . Hyatt , 316 Mich. App. at 403, 891 N.W.2d 549, held that "[t]he considerations required by Miller 's individualized sentencing *302 guarantee are sentencing factors, not elements that must be found before a more severe punishment is authorized." It held that although "a sentencing judge will necessarily engage in fact-finding during the Miller analysis," this fact-finding will not increase the defendant's sentence beyond that authorized by the jury's verdict because the jury's verdict alone authorizes a life-without-parole sentence. Id . at 406, 891 N.W.2d 549. In other words, "[t]he analysis involving the Miller factors does not aggravate punishment; instead, the analysis acts as a means of mitigating punishment because it acts to caution the sentencing judge against imposing the maximum punishment authorized by the jury's verdict, a sentence which Montgomery cautioned is disproportionate for the vast majority of juvenile offenders[.]" Id . at 409, 891 N.W.2d 549 (quotation marks and citation omitted).
However, Hyatt also held that "a sentencing court must begin its analysis with the understanding that life without parole is, unequivocally, only appropriate in rare cases." Id . at 419-420, 891 N.W.2d 549. In addition, with regard to the appellate standard of review, Hyatt held that "the imposition of a life-without-parole sentence on a juvenile requires a heightened degree of scrutiny regarding whether a life-without-parole sentence is proportionate **110 to a particular juvenile offender, and even under this deferential standard, an appellate court should view such a sentence as inherently suspect." Id . at 424, 891 N.W.2d 549. Finally, Hyatt reversed defendant's sentence and remanded the case to the trial court for reconsideration because although the trial court considered the Miller factors, it did not consider whether Hyatt was "the truly rare juvenile mentioned in Miller who is incorrigible and incapable of reform," which the trial court must do before imposing a life-without-parole sentence. Id . at 429, 891 N.W.2d 549.[6]
IV. ANALYSIS
A. JUDGE OR JURY
These cases present a difficult issue because the pertinent United States Supreme Court opinions are not models of clarity, nor is the Legislature's response to Miller , i.e., MCL 769.25. Under these circumstances, it is especially important to remember that "[s]tatutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." In re Sanders , 495 Mich. at 404, 852 N.W.2d 524, citing Taylor , 468 Mich. at 6, 658 N.W.2d 127. That is, **111 assuming that there are two reasonable ways of interpreting MCL 769.25 -one that renders the statute unconstitutional and one that renders it constitutional-we should choose the interpretation that renders the statute constitutional. Evans Prod. Co. v. Fry , 307 Mich. 506, 533-534, 12 N.W.2d 448 (1943) ("[I]t is our duty to adopt such a construction, if admissible, which will uphold validity *303 rather than destroy a legislative enactment" and " '[i]n cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.' ") (citation omitted); Grebner v. State , 480 Mich. 939, 940, 744 N.W.2d 123 (2007) ("This Court 'must presume a statute is constitutional and construe it as such, unless the only proper construction renders the statute unconstitutional.' ") (citation omitted); Greater Bible Way Temple of Jackson v. City of Jackson , 478 Mich. 373, 408 n. 27, 733 N.W.2d 734 (2007) ("Whenever possible, courts should construe statutes in a manner that renders them constitutional.") In the end, we do not believe that it is "clearly apparent" that MCL 769.25 is unconstitutional. In re Sanders , 495 Mich. at 404, 852 N.W.2d 524.
The precise issue here is whether MCL 769.25"removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone" in violation of the Sixth Amendment. Apprendi , 530 U.S. at 482-483, 120 S.Ct. 2348 (emphasis omitted). In other words, "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." Cunningham v. California , 549 U.S. 270, 290, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). Therefore, the pertinent question **112 is whether MCL 769.25 requires the trial court to find an additional fact before it can sentence a juvenile to life without parole or whether the jury's verdict alone exposes a juvenile to a life-without-parole sentence. MCL 769.25 certainly does not expressly require the court to find any particular fact before imposing life without parole and we should not read such a requirement into the statute, especially given that doing so would render the statute unconstitutional because "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt." Ring , 536 U.S. at 602, 122 S.Ct. 2428.[7]
MCL 769.25(3) does require the prosecutor to file a motion to seek a life-without-parole sentence for a defendant less than 18 years old, and this motion must specify the grounds on which the prosecutor is requesting such a sentence. If such a motion is not filed, the trial court must sentence the juvenile to a term-of-years sentence. MCL 769.25(4) and (9). It is argued that because the "default" sentence is a term-of-years sentence, see Carp , 496 Mich. at 458, 852 N.W.2d 801,[8] anything *304 other **113 than a term-of-years sentence, i.e., life without parole, requires that facts be found by the jury. However, this is too simplistic a view. The real question is whether, for Sixth Amendment purposes, some sort of factual finding is required to go above the "default" sentence. Just because the prosecutor has to file a motion to seek a life-without-parole sentence in order to avoid the default term-of-years sentence does not mean that additional fact-finding is required before a life-without-parole sentence can be imposed. That is, the mere fact that a term-of-years sentence constitutes the default sentence in the absence of a motion filed by the prosecutor seeking a life-without-parole sentence does not mean that the jury must find additional facts before a life-without-parole sentence can be imposed. In other words, just because some legislative procedural precondition must be satisfied after the jury renders its verdict before a life-without-parole sentence can be imposed does not mean that the facts reflected in the jury verdict alone do not authorize the imposition of a life-without-parole sentence. The critical question is whether additional factual findings have to be made, not whether an additional motion has to be filed.
However, MCL 769.25 requires more than that a motion be filed. It also requires the court to conduct a hearing to consider the Miller factors, MCL 769.25(6), and to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed," MCL 769.25(7). While the statute does not expressly **114 require any specific finding of fact to be made before a life-without-parole sentence can be imposed, it is argued by defendants and the dissent that the statute implicitly requires a finding of fact to be made before a life-without-parole sentence can be imposed given that the statute requires the court to specify the aggravating and mitigating circumstances considered by the court and its reasons supporting the sentence imposed. In other words, although the statute does not expressly state that the trial court must find an aggravating circumstance before it imposes a life-without-parole sentence, it implicitly requires such a finding. While this argument is not unreasonable, it is also not "clearly apparent" that such a finding is required. In re Sanders , 495 Mich. at 404, 852 N.W.2d 524.
To begin with, MCL 769.25(6) merely requires the trial court to "consider the factors listed in Miller ...."[9] The following are the factors listed in Miller : (1) "his chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him-and from which he cannot usually extricate *305 himself-no matter how brutal or dysfunctional"; (3) "the circumstances of the **115 homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth-for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation...." Miller , 567 U.S. at 477-478, 132 S.Ct. 2455. It is undisputed that all of these factors are mitigating factors. Id . at 489, 132 S.Ct. 2455 ("[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.") (emphasis added). That is, these are factors that "counsel against irrevocably sentencing [juveniles] to a lifetime in prison." Id . at 480, 132 S.Ct. 2455. The Sixth Amendment does not prohibit trial courts from considering mitigating circumstances in choosing an appropriate sentence because the consideration of mitigating circumstances does not expose a defendant to a sentence that exceeds the sentence that is authorized by the jury's verdict.[10] In other words, the Sixth Amendment only prohibits fact-finding that increases a defendant's sentence; it does not prohibit fact-finding **116 that reduces a defendant's sentence.[11] Therefore, the requirement in *306 MCL 769.25(6) that the court consider the Miller factors does not violate the Sixth Amendment.
MCL 769.25(7), however, requires still more. It requires the court to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence **117 imposed." Id . Aggravating circumstances, unlike mitigating circumstances, do have the effect of increasing a defendant's sentence. The question at issue here, however, is whether aggravating circumstances increase a defendant's sentence beyond that authorized by the jury's verdict. The answer to that question is "no," because the trial court does not have to find an aggravating circumstance in order to sentence a juvenile to life without parole.[12] If the trial court simply finds that there are no mitigating circumstances, it can sentence a juvenile to life without parole. There is nothing in the statute that prohibits this.
While the statute requires the trial court to consider the aggravating and mitigating circumstances and to specify the court's reasons supporting the sentence imposed, the court could find that there are no mitigating or aggravating circumstances and that is why it is imposing a life-without-parole sentence. This demonstrates that a life-without-parole sentence is authorized by the jury's verdict alone. That is, given that the statute does not require the trial court to affirmatively find an aggravating circumstance in order to impose a life-without-parole sentence, such a sentence is necessarily **118 authorized by the jury's verdict alone.[13] And given that a life-without-parole sentence is authorized by the jury's verdict alone, additional fact-finding by the court is not prohibited by the Sixth Amendment.[14] In other words, a *307 factual finding made by the court that an aggravating circumstance exists does not violate the Sixth Amendment because it does not expose the defendant to an enhanced sentence, i.e., a sentence that exceeds the one authorized by the jury's verdict alone. See Apprendi , 530 U.S. at 481, 120 S.Ct. 2348 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion-taking **119 into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute.") (emphasis omitted); Alleyne v. United States , 570 U.S. 99, 116, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). The United States Supreme Court's "Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." Rita v. United States , 551 U.S. 338, 352, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Instead, "[t]he Sixth Amendment question, the Court has said, is whether the law forbids a judge to increase a defendant's sentence unless the judge finds facts that the jury did not find (and the offender did not concede)." Id . Nothing within MCL 769.25 forbids the judge from imposing a life-without-parole sentence unless the judge finds facts that the jury did not find (and the offender did not concede). In other words, MCL 769.25 does not require the trial court to make any particular factual finding before it can impose a life-without-parole sentence.
The next question is whether the Eighth Amendment, under Miller or Montgomery , requires additional fact-finding before a life-without-parole sentence can be imposed. On the one hand, there is language in both Miller and Montgomery that at least arguably would suggest that a finding of irreparable corruption is required before a life-without-parole sentence can be imposed. For example, Miller , 567 U.S. at 479-480, 132 S.Ct. 2455, stated:
[G]iven all we have said in Roper , Graham , and this decision about children's diminished culpability and **120 heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. [Citations omitted.]
This language conceivably could be read to suggest that the sentencer must find that the juvenile offender's crime reflects irreparable corruption before a life-without-parole sentence can be imposed.
However, Miller clarified that it was only holding that "mandatory life-without-parole *308 sentences for juveniles violate the Eighth Amendment," id . at 470, 132 S.Ct. 2455 (emphasis added), and that "a sentencer [must] have the ability to consider the mitigating qualities of youth," id . at 476, 132 S.Ct. 2455 (quotation marks and citation omitted). The Court expressly stated that Miller "does not categorically bar a penalty for a class of offenders or type of crime...." Id . at 483, 132 S.Ct. 2455. "Instead, it mandates only that a sentencer follow a certain process -considering an offender's youth and attendant characteristics-before imposing a particular penalty." Id . (emphasis added). In other words, Miller simply held that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment and that before such a sentence can be imposed on a juvenile, the sentencer must consider the mitigating qualities of youth. Miller thus did not hold that a finding of "irreparable corruption" must be made before a life-without-parole sentence can be imposed on a juvenile. **121 As noted earlier, there is also language in Montgomery that arguably would seem to suggest that a finding of irreparable corruption is required before a life-without-parole sentence can be imposed. For example, Montgomery , 577 U.S. at ----, 136 S.Ct. at 732, 734, held that " Miller announced a substantive rule," rather than a procedural rule, because Miller "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' " (Citation omitted.) Therefore, "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." Id . at ----, 136 S.Ct. at 734 (quotation marks and citations omitted). In other words, "[b]ecause Miller determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status-that is, juvenile offenders whose crimes reflect transient immaturity of youth." Id . at ----, 136 S.Ct. at 734 (quotation marks and citations omitted). See also id . at ----, 136 S.Ct. at 734 (" Miller did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."). This language could also be read as suggesting that a finding of irreparable corruption or permanent incorrigibility must be made before a life-without-parole sentence can be imposed on a juvenile.
However, Montgomery itself expressly stated that this is not the case: " Miller did not require trial courts to make a finding of fact regarding a child's incorrigibility." Id . at ----, 136 S.Ct. at 735. Montgomery further explained:
**122 That this finding is not required, however, speaks only to the degree of procedure Miller mandated in order to implement its substantive guarantee. When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems. See Ford [v. Wainwright , 477 U.S. 399, 416-417, 106 S.Ct. 2595, 91 L.Ed.2d 335] (1986) ("[W]e leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences."). Fidelity to this important principle of federalism, however, should not be construed to demean the substantive character of the *309 federal right at issue. That Miller did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary, Miller established that this punishment is disproportionate under the Eighth Amendment. [ Id . at ----, 136 S.Ct. at 735 (alterations in original).]
Given that Montgomery expressly held that " Miller did not require trial courts to make a finding of fact regarding a child's incorrigibility," id . at ----, 136 S.Ct. at 735,[15] we likewise hold that Miller does not require trial courts to make a finding of fact regarding a child's incorrigibility.[16]
**123 Montgomery held that while the substantive rule is that juveniles who are not "irreparably corrupt" cannot be sentenced to life without parole, the states are free to develop their own procedures to enforce this new substantive rule.[17] In *310 this sense, the "irreparable corruption" **125 standard is analogous to the proportionality standard that applies to all criminal sentences. See Montgomery , 577 U.S. at ----, 136 S.Ct. at 726 ("[A] lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption.' ") (quotation marks and citations omitted). Just as courts are not allowed to impose disproportionate sentences, courts are not allowed to sentence juveniles who are not irreparably corrupt to life without parole. And just as whether a sentence is proportionate is not a factual finding, whether a juvenile is "irreparably corrupt" is not a factual finding.[18] In other words, the Eighth Amendment does not require the finding of any particular fact before imposing a life-without-parole sentence, and *311 therefore the Sixth Amendment is not violated by allowing the trial court to decide whether to impose life without parole.[19] **126 This conclusion is further supported by the fact that all the courts that have considered this issue have likewise concluded that the Sixth Amendment is not violated by allowing the trial court to decide whether to impose life without parole. See, for example, State v. Lovette , 233 N.C. App. 706, 719, 758 S.E.2d 399 (2014) ("[A] finding of irreparable corruption is not required...."); State v. Fletcher , 149 So.3d 934, 943 (La App., 2014) (" Miller does not require proof of an additional element of 'irretrievable depravity' or 'irrevocable corruption' "); Commonwealth v. Batts , 640 Pa. 401, 478, 163 A.3d 410, 456 (2017) ("We further disagree with [the defendant] that a jury must make the finding regarding a juvenile's eligibility to be sentenced to life without parole.");[20] People v. Blackwell , 3 Cal. App. 5th 166, 194, 207 Cal.Rptr.3d 444 (2016) (" Miller does not require irreparable corruption be proved to a jury beyond a reasonable doubt in order to 'aggravate' or **127 'enhance' the sentence for [a] juvenile offender convicted of homicide.");[21] State v. Ramos , 187 Wash. 2d 420, 436-437, 387 P.3d 650 (2017) (" Miller ... does not require the sentencing court ... to make an explicit finding that the offense reflects irreparable corruption on the part of the juvenile.").
B. IMPOSITION OF LIFE WITHOUT PAROLE
Hyatt , 316 Mich. App. at 421, 891 N.W.2d 549, held that "the sentencing court must operate under the notion that more likely than not, life without parole is not proportionate." Hyatt also held that "the trial court committed an error of law by failing to adhere to Miller 's and Montgomery 's directives about the rarity with which a life-without-parole sentence should be imposed." Id . at 428, 891 N.W.2d 549. That is, "[w]hen deciding to sentence defendant Hyatt to life without parole, the *312 trial court focused on the Miller factors[;] [h]owever, the court gave no credence to Miller 's repeated warnings that a life-without-parole sentence should only be imposed on the rare or uncommon juvenile offender." Id . Therefore, the Court of Appeals "reverse[d] defendant Hyatt's sentence and remand[ed] to the trial court for resentencing" and directed the trial court to "not only consider the Miller factors, but decide whether defendant Hyatt is the truly rare juvenile mentioned in Miller who is incorrigible and incapable of reform." Id . at 429, 891 N.W.2d 549.[22] **128 In addition, while Hyatt initially held that "appellate review of the sentence imposed is for abuse of discretion," id . at 423, 891 N.W.2d 549, it subsequently held that "the imposition of a life-without-parole sentence on a juvenile requires a heightened degree of scrutiny regarding whether a life-without-parole sentence is proportionate to a particular juvenile offender, and even under this deferential standard, an appellate court should view such a sentence as inherently suspect," id . at 424, 891 N.W.2d 549. The Court of Appeals stated, "While we do not suggest a presumption against the constitutionality of that sentence, we would be remiss not to note that review of that sentence requires a searching inquiry into the record with the understanding that, more likely than not, a life-without-parole sentence imposed on a juvenile is disproportionate." Id . at 425-426, 891 N.W.2d 549. Contrary to the Court of Appeals' own contention, this sounds tantamount to a presumption against life-without-parole sentences.
The Court of Appeals' opinion in Hyatt is internally inconsistent. On the one hand, it held that no factual finding of irreparable corruption must be made and thus that no jury is required. On the other hand, it held that the trial court erred by not explicitly deciding whether defendant is the truly rare juvenile who is irreparably corrupt. We hold that the latter conclusion is erroneous. For the reasons discussed earlier, the trial court is not obligated to explicitly find that defendant is irreparably corrupt. See Montgomery , 577 U.S. at ----, 136 S.Ct. at 735 (" Miller did not require trial courts to make a finding regarding a child's incorrigibility."). The trial court also does not have to explicitly find that defendant is "rare." Indeed, we cannot even imagine how a trial court would go about determining whether a particular defendant is "rare" or not.
**129 Miller used the word "uncommon" only once and the word "rare" only once, and when those words are read in context it is clear that the Court did not hold that a trial court must explicitly find that a defendant is "rare" or "uncommon" before it can impose life without parole. Miller , 567 U.S. at 479-480, 132 S.Ct. 2455, stated:
[G]iven all we have said ... about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon . That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably *313 sentencing them to a lifetime in prison. [Emphasis added; citations omitted.]
The first sentence of this paragraph was simply the Court's prediction that the imposition of life without parole on juveniles will be "uncommon."[23] This is demonstrated by the use of the word "think" rather **130 than "hold." The second sentence simply makes the point that juveniles who are irreparably corrupt are assertedly "rare." And the third sentence makes it clear that all Miller requires sentencing courts to do is to consider how children are different before imposing life without parole on a juvenile.
Montgomery quoted Miller 's references to "uncommon" and "rare." In addition, it stated: (1) "Although Miller did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption' "; (2) Miller "recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified"; (3) " Miller did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility"; (4) "After Miller , it will be the rare juvenile offender who can receive that same sentence"; and (5) " Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." Montgomery , 577 U.S. at ----, 136 S.Ct. at 733-734 (quotation marks and citations omitted; emphasis added). Again, these statements simply make the point that juvenile offenders who are deserving of life without parole are rare. To begin with, only those juvenile offenders who have been convicted of first-degree murder can be subject to life without parole, which is a small percentage of juvenile offenders. In addition, since Miller , the only juvenile offenders who can be sentenced to life without parole are those who have been convicted of first-degree murder and whose mitigating circumstances do not require a lesser sentence. In other words, Miller **131 and Montgomery simply noted that those juvenile offenders who are deserving of life-without-parole sentences are rare; they did not impose any requirement on sentencing courts to explicitly find that a juvenile offender is or is not "rare" before imposing life without parole.[24] *314 Similarly, neither Miller nor Montgomery imposes a presumption against life without parole for those juveniles who have been convicted of first-degree murder on either the trial court or the appellate court. Miller and Montgomery simply require that the trial court consider "an offender's youth and attendant characteristics" before imposing life without parole. Miller , 567 U.S. at 483, 132 S.Ct. 2455. Indeed, there is language in Montgomery that suggests that the juvenile offender bears the burden of showing that life without parole is not the appropriate sentence by introducing mitigating evidence. Montgomery , 577 U.S. at ----, 136 S.Ct. at 736 ("[P]risoners ... must be given the opportunity to show their crime did not reflect irreparable corruption....").
Finally, neither Miller nor Montgomery requires this Court to deviate from its traditional abuse-of-discretion standard in reviewing a trial court's decision to impose life without parole. This Court reviews sentencing decisions for an abuse of discretion. See People v. Milbourn , 435 Mich. 630, 636, 461 N.W.2d 1 (1990) ("[A] given sentence can be said to constitute an **132 abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."); People v. Steanhouse , 500 Mich. 453, 471, 902 N.W.2d 327 (2017) ("[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion."). This Court has refused to review sentencing decisions de novo.
We do not suggest that in the day-in-day-out review of sentencing issues appellate courts should simply substitute their judgment for that of the trial court. Indeed, such de novo review of sentences would be unprecedented in the realm of criminal appeals and at odds with any reasonable construction of the term "abuse of discretion." [ Milbourn , 435 Mich. at 666, 461 N.W.2d 1.]
In People v. Babcock , 469 Mich. 247, 265, 666 N.W.2d 231 (2003), this Court held that a trial court's decision to depart from the guidelines will be reviewed for an abuse of discretion. As this Court explained:
[T]he trial court is optimally situated to understand a criminal case and to craft an appropriate sentence for one convicted in such a case....
It is clear that the Legislature has imposed on the trial court the responsibility of making difficult decisions concerning criminal sentencing, largely on the basis of what has taken place in its direct observation. Review de novo is a form of review primarily reserved for questions of law, the determination of which is not hindered by the appellate court's distance and separation from the testimony and evidence produced at trial. The application of the statutory sentencing guidelines to the facts is
not a generally recurring, purely legal matter, such as interpreting a set of legal words, say, those of an individual guideline, in order to determine their **133 basic intent. Nor is that question readily resolved by reference to general legal principles and standards alone. Rather, the question at issue grows out of, and is bounded by, case-specific detailed factual circumstances. [ Buford v. United States , 532 U.S. 59, 65, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001).]
Because of the trial court's familiarity with the facts and its experience in sentencing, the trial court is better situated than the appellate court to determine whether a departure is warranted in a *315 particular case. Accordingly, review de novo, in which a panel of appellate judges could substitute its own judgment for that of the trial court, is surely not the appropriate standard by which to review the determination that a substantial and compelling reason exists to justify a departure from the guidelines range. Instead, the appellate court must accord this determination some degree of deference.
.... At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment. An abuse of discretion occurs, however, when the trial court chooses an outcome falling outside this principled range of outcomes....
Accordingly, the Court of Appeals must determine, upon a review of the record, whether the trial court had a substantial and compelling reason to depart from the guidelines, recognizing that the trial court was in the better position to make such a determination and giving this determination appropriate deference. The deference that is due is an acknowledgment of the trial court's extensive knowledge of the facts and that court's direct familiarity with the circumstances of the offender. The Court of Appeals is to conduct the thorough review required by MCL 769.34(11), honoring the prohibition against departures not grounded in a substantial and compelling reason. MCL 769.34(3). In doing so, however, **134 the Court must proceed with a caution grounded in the inherent limitations of the appellate perspective. [ Id . at 267-270, 666 N.W.2d 231 (citations omitted).] [25 ]
The same is true here. The Legislature has imposed on the trial court the responsibility of making the difficult decision regarding whether to impose a sentence of life without parole or a term of years. This decision should be based on the " 'case-specific detailed factual circumstances.' " Id . at 268, 666 N.W.2d 231, quoting Buford , 532 U.S. at 65, 121 S.Ct. 1276. "Because of the trial court's familiarity with the facts and its experience in sentencing, the trial court is better situated than the appellate court to determine" whether a life-without-parole sentence is warranted in a particular case. Babcock , 469 Mich. at 268, 666 N.W.2d 231. "Accordingly, review de novo, in which a panel of appellate judges could substitute its own judgment for that of the trial court, is surely not the appropriate standard by which to review the determination" that a life-without-parole sentence is warranted. Id ."Instead, the appellate court must accord this determination some degree of deference." Id . at 269, 666 N.W.2d 231. "The deference that is due is an acknowledgment of the trial court's extensive knowledge of the facts and that court's direct familiarity with the circumstances of the offender." Id . at 270, 666 N.W.2d 231.
The United States Supreme Court has also adopted an abuse-of-discretion standard for reviewing a trial court's sentencing decisions. See *316 Koon v. United States , 518 U.S. 81, 97, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("[I]t is not the role of an appellate court to substitute **135 its judgment for that of the sentencing court as to the appropriateness of a particular sentence.") (quotation marks and citations omitted); Gall v. United States , 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) ("[C]ourts of appeals must review all sentences ... under a deferential abuse-of-discretion standard."). In Gall , 552 U.S. at 49, 128 S.Ct. 586, the Court expressly rejected the practice of "applying a heightened standard of review to sentences outside the Guidelines range," explaining that this is "inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions-whether inside or outside the Guidelines range." As Gall explained:
The sentencing judge is in a superior position to find facts and judge their import ... in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, [d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do. [ Id . at 51-52, 128 S.Ct. 586 (quotation marks and citations omitted).]
Particularly relevant to the instant case, Gall held that, since Koon , the Court had been "satisfied that a more deferential abuse-of-discretion standard could successfully balance the need to 'reduce unjustified disparities' across the Nation and 'consider every convicted person as an individual.' " Id . at 53 n. 8, 128 S.Ct. 586, quoting Koon , 518 U.S. at 113, 116 S.Ct. 2035. The whole point of Miller is that mandatory life-without-parole sentences with regard to juveniles are unconstitutional and that such mandatory sentencing schemes must be replaced with **136 individualized sentencing schemes. See Miller , 567 U.S. at 465, 132 S.Ct. 2455 ("Such a scheme prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change,' and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties.") (citation omitted). And the Court has already held that a deferential abuse-of-discretion standard is compatible with a sentencing scheme that considers every convicted person as an individual. See Gall , 552 U.S. at 49, 128 S.Ct. 586 ; see also United States v. Jefferson , 816 F.3d 1016, 1019 (C.A. 8, 2016) (applying Miller to a 600-month sentence and holding that "[w]e review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard"). Miller called for individualized sentences, and the trial court is in a better position than an appellate court to carry this task out because the trial court will almost always be more familiar with each individual defendant than is an appellate court.[26] **137 *317 Miller 's and Montgomery 's emphasis on the rarity of juveniles deserving of life-without-parole sentences does not counsel against applying an abuse-of-discretion standard. The trial court remains in the best position to determine whether each particular defendant is deserving of life without parole. All crimes have a maximum possible penalty, and when trial judges have discretion to impose a sentence, the imposition of the maximum possible penalty for any crime is presumably "uncommon" or "rare." Yet this Court has never imposed a heightened standard of appellate review, and it should not do so in this instance.[27]
V. CONCLUSION
For these reasons, we hold that the decision to sentence a juvenile to life without parole is to be made by a judge and that this decision is to be reviewed under the traditional abuse-of-discretion standard. Therefore, we reverse the judgment of the Court of Appeals in Skinner and affirm that part of Hyatt that held that "[a] judge, not a jury, must determine whether to impose a life-without-parole sentence or a term-of-years sentence under MCL 769.25." Hyatt , 316 Mich. App. at 415, 891 N.W.2d 549. However, we reverse the part of Hyatt that adopted a heightened standard of review for life-without-parole sentences imposed under MCL 769.25 **138 and that remanded that case to the trial court for it to "decide whether defendant Hyatt is the truly rare juvenile mentioned in Miller who is incorrigible and incapable of reform." Id . at 429, 891 N.W.2d 549. No such explicit finding is required. Finally, we remand both of these cases to the Court of Appeals for it to review defendants' sentences under the traditional abuse-of-discretion standard.[28]
McCormack, J. (dissenting ).
There is much in the majority opinion with which I agree. For example, I agree that if MCL 769.25 can reasonably be construed in a constitutional manner, we should so construe it. And I generally agree with the majority's discussion of the applicable legal principles. But I respectfully dissent from the majority's conclusion that there are two reasonable ways of interpreting MCL 769.25, one of which is constitutional. Reading the statute as "murder-plus"[1] would violate the Sixth Amendment under *318 Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny. And I disagree with the majority that reading the statute as "murder-minus"[2] cures all its constitutional deficiencies. In my view, reading the statute as murder-minus **139 renders it unconstitutional under the Eighth Amendment as interpreted by the United States Supreme Court in Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and Montgomery v. Louisiana , 577 U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). Read either way, MCL 769.25 suffers from a constitutional deficiency.
I. MURDER-PLUS VIOLATES THE SIXTH AMENDMENT
As the majority thoroughly explains, MCL 769.25 requires a prosecutor and a trial court to take additional steps after a jury has reached a guilty verdict in order for the court to impose a sentence of life without parole (LWOP) on a juvenile offender. The prosecutor must file a motion within the applicable time, the court must conduct a hearing at which it considers the Miller factors, and the court must "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." MCL 769.25(7). As the majority appears to recognize, if that last step requires a trial court to make a factual finding beyond that inherent in the jury's verdict before it can impose an LWOP sentence on a juvenile, the statute would violate Apprendi and its progeny. See Apprendi , 530 U.S. at 490, 120 S.Ct. 2348 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury , and proved beyond a reasonable doubt") (emphasis added).
The majority concludes that reading the statute as "implicitly" requiring trial courts to find an aggravating circumstance-a fact that increases the sentence beyond that authorized by the jury verdict-before it can impose an LWOP sentence on a juvenile is "not **140 unreasonable...." Ante at 304. I agree; it is not. In fact it is the more reasonable reading of MCL 769.25(7). The plain text of that subsection requires a trial court to specify the aggravating and mitigating circumstances it considered and its reasons supporting the sentence imposed. Thus, at minimum when the trial court finds at least one aggravating circumstance as a basis to impose an LWOP sentence on a juvenile, the statute violates the Sixth Amendment by allowing the trial court to increase the defendant's sentence on the basis of facts not found by a jury.
The majority suggests that a trial court could make no factual findings before imposing an LWOP sentence, revealing there is no Sixth Amendment flaw in the statute. I disagree. MCL 769.25mandates that the court "specify" circumstances considered and "reasons supporting" its sentencing decision as part of the hearing mandated before the court can impose an LWOP sentence on juvenile. It must follow that a failure to abide by the statute-imposing an LWOP sentence on a juvenile without providing such reasons-would result in an invalid sentence. I see no way to conclude that the jury verdict alone authorizes an LWOP juvenile sentence under the statute's plain language.
*319 The conflict panel in People v. Hyatt , 316 Mich. App. 368, 405, 891 N.W.2d 549 (2016), erroneously focused on the prosecutor's filing of a motion under MCL 769.25(2) as a significant moment resulting "in the statutory maximum [becoming] life without parole, and the trial court [having] discretion to sentence up to that statutory maximum." The flaw in that argument is that while the filing of that motion opens the door to a potential LWOP sentence for a juvenile, it does not alone establish a sufficient basis for a trial court to **141 impose such a sentence. MCL 769.25(7) does that work. Only if a trial court makes the necessary findings under Subsection (7) does the potential for punishment increase; that is, the potential for increase depends on those findings. It is the court's factual findings made under that subsection, not the prosecutor's filing of a motion under MCL 769.25(2), that "increases the penalty for a crime beyond the prescribed statutory maximum ...." Apprendi , 530 U.S. at 490, 120 S.Ct. 2348. Without those findings only a term-of-years sentence is permitted. MCL 769.25(9).[3]
MCL 769.25 is not materially distinguishable from the Arizona statute held unconstitutional in Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In Ring , as here, the statute required the trial court to determine the existence of aggravating or mitigating circumstances. Indeed, in Ring the statute provided that first-degree murder " 'is punishable by death or life imprisonment as provided by § 13-703.' " Id . at 592, 122 S.Ct. 2428 (citation omitted). The statute in Ring thus presented the more severe punishment of death as an equally available alternative more explicitly than MCL 769.25 does with LWOP. Yet the United States Supreme Court rejected the state's argument that the defendant had been "sentenced within the range of punishment authorized by the jury verdict." Id . at 604, 122 S.Ct. 2428. The statutes at issue both in Ring and here provided **142 for one punishment based on the jury verdict (in Ring , LWOP; here, a term of years), with an enhanced punishment available only after more proceedings and fact-finding. See also Hurst v. Florida , 577 U.S. ----, 136 S.Ct. 616, 621-622, 193 L.Ed.2d 504 (2016) ("The analysis the Ring Court applied to Arizona's sentencing scheme applies equally to Florida's. Like Arizona at the time of Ring , Florida does not require the jury to make the critical findings necessary to impose the death penalty. Rather, Florida requires a judge to find these facts.").
The majority believes that Ring is distinguishable because the statute in that case expressly required the finding of an aggravating circumstance before the trial court could impose the death penalty and MCL 769.25 does not require such a finding before a trial court can impose LWOP. This distinction lacks significance; in both cases the authority to impose the increased maximum hinges on the trial court's holding a hearing and making additional findings beyond those found by a jury. That MCL 769.25 does not say that a trial court cannot impose LWOP unless it first finds an aggravating circumstance makes the enhanced sentence no less contingent on the trial court's making additional findings. "When a judge's finding based on a mere *320 preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.' " Apprendi , 530 U.S. at 495, 120 S.Ct. 2348, quoting McMillan v. Pennsylvania , 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).
Nor does the fact that the statute does not require a particular factual finding before a trial court may impose LWOP save it from Sixth Amendment peril. Hyatt , 316 Mich. App. at 399, 891 N.W.2d 549 (finding no Sixth Amendment **143 flaw in MCL 769.25 in part because it is not "a statutory scheme that makes the imposition of life without parole contingent on any particular finding"). This feature simply does not help the statute square with the applicable Sixth Amendment jurisprudence. "Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi ), one of several specified facts (as in Ring ), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." Blakely v. Washington , 542 U.S. 296, 305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
Finally, the Hyatt panel's attempt to sidestep the Sixth Amendment flaw in MCL 769.25 because the Miller factors are mere "sentencing factors" rather than elements that a jury must find before the court may impose an LWOP sentence does not help. Hyatt , 316 Mich. App. at 403, 891 N.W.2d 549. The United States Supreme Court has repeatedly rejected this label-based distinction because the "inquiry is one not of form, but of effect." Apprendi , 530 U.S. at 494, 120 S.Ct. 2348 ; Ring , 536 U.S. at 604, 122 S.Ct. 2428 (quoting Apprendi ). "[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives-whether the statute calls them elements of the offense, sentencing factors, or Mary Jane-must be found by the jury beyond a reasonable doubt." Ring , 536 U.S. at 610, 122 S.Ct. 2428 (Scalia, J., concurring).
The factual findings required by MCL 769.25(7) are essentially a prerequisite to a trial court's ability to sentence a juvenile to LWOP; the statute tells us so. See MCL 769.25(3) through (7) (if the prosecutor moves **144 to have the trial court sentence the defendant to LWOP, the court shall hold a hearing and shall make findings; otherwise the trial court must sentence the defendant to the default term-of-years sentence provided in MCL 769.25(9) ). The court's authority to sentence the defendant to LWOP is not "derive[d] wholly from the jury's verdict." Blakely , 542 U.S. at 306, 124 S.Ct. 2531. Instead, it arises only after the court makes additional factual findings that go beyond the elements of the convicted offense. The effect of those findings is the authority to impose an LWOP sentence on a juvenile. So the statutory scheme falls within the Apprendi rule: "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi , 530 U.S. at 490, 120 S.Ct. 2348.
In short, MCL 769.25(9) authorizes a maximum term-of-years sentence for juveniles convicted of the enumerated offenses based solely on the jury's verdict. The remainder of the statute requires motion + hearing + consideration of the Miller factors + a statement of aggravated and mitigating circumstances considered by the court and reasons supporting its sentence before a trial court can impose LWOP on a juvenile. For these reasons, the most reasonable reading of *321 MCL 769.25, reading it as murder-plus, violates the Sixth Amendment of the United States Constitution under Apprendi and its progeny.
II. MURDER-MINUS VIOLATES THE EIGHTH AMENDMENT
But, the majority concludes, even if reading the statute as murder-plus would create a Sixth Amendment obstacle, we need not be concerned. We just read it as murder-minus instead. For the majority this is a reasonable (and constitutional) alternative reading because **145 "the court could find that there are no mitigating or aggravating circumstances and that is why it is imposing a life-without-parole sentence." Ante at 306. That interpretation, however, suffers from its own constitutional flaw-it violates the Eighth Amendment as interpreted in Miller and Montgomery .
In Miller , 567 U.S. at 465, 132 S.Ct. 2455, the United States Supreme Court held that mandatory LWOP sentences for juveniles violated the requirement of "individualized sentencing for defendants facing the most serious penalties." The majority's interpretation of MCL 769.25 as murder-minus, or as allowing a trial court to impose a sentence of LWOP without making any additional findings, flouts the individualized sentencing and rigorous inquiry requirements of Miller and Montgomery .
The majority disagrees that reading the statute in this way violates Miller because neither Miller nor Montgomery requires a trial court to make a specific factual finding that the juvenile is "irreparably corrupt." It is right about that. See Montgomery , 577 U.S. at ----, 136 S.Ct. at 735 (stating that " Miller did not require trial courts to make a finding of fact regarding a child's incorrigibility");[4] but see, e.g., Veal v. State , 298 Ga. 691, 702, 784 S.E.2d 403 (2016) (concluding that Miller and Montgomery require "a specific determination that [a defendant] is irreparably corrupt " before a court may impose an LWOP sentence on a juvenile). But it does not follow that the court can find nothing beyond the jury's verdict before it can impose an LWOP sentence. Montgomery stated that the Miller hearing **146 "gives effect to Miller 's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." Montgomery , 577 U.S. at ----, 136 S.Ct. at 735. So the majority's observation that Miller did not impose a specific formal fact-finding requirement is beside the point; what matters is that the Eighth Amendment requires some additional finding(s) supporting the legal conclusion that a juvenile's offense is unusual enough to warrant an LWOP sentence before a court may impose such a sentence. Montgomery , 577 U.S. at ----, 136 S.Ct. at 734 ;[5] see *322 also Hyatt , 316 Mich. App. at 411, 891 N.W.2d 549 ("Viewing the Miller factors as a means of mitigation is not to suggest, however, that life without parole remains the default sentence for juveniles convicted of first-degree murder.... Indeed, it is doubtful whether that result could be squared with Miller 's conclusions about the **147 constitutional infirmities inherent in a mandatory life-without-parole sentencing scheme for juveniles.").
For this reason, the split of authority in state courts post- Miller on whether a court must make a specific "finding" of irreparable corruption misses the larger point. Before a court can sentence a juvenile to LWOP, the court must make a finding that an LWOP sentence complies with the dictates of Miller (whatever label or form that "finding" takes). And, as discussed later, appellate courts must review that finding de novo because it is a legal conclusion about whether the sentence is constitutional under the Eighth Amendment (while reviewing the underlying facts supporting that "finding" for clear error).
Miller requires something beyond merely a finding that all the elements of an offense are proved to sentence a juvenile to LWOP. Instead, "an offender's age" matters in determining the appropriateness of an LWOP sentence, as does "the wealth of characteristics and circumstances attendant to" youth. Miller , 567 U.S. at 476, 132 S.Ct. 2455. The facts necessary to establish the appropriateness of an LWOP sentence for a juvenile are therefore specific to each offender, and the facts found as part of the jury verdict itself therefore will not, standing alone, sustain such a sentence.[6] A murder-minus **148 reading of the statute violates Miller because it is the very Sixth Amendment violation MCL 769.25 creates-requiring the trial court to make additional findings before sentencing a juvenile to LWOP-that the Eighth Amendment requires.[7] *323 Reading the statute as the majority does renders meaningless the individualized sentencing required by Miller by allowing LWOP effectively to serve as the default sentence as long as the prosecutor files the motion required under MCL 769.25(2). After all, if a trial court can simply hold the required hearing, consider the Miller factors, and declare "I find no mitigating or aggravating circumstances, so I sentence the defendant to life without parole," nothing would preclude trial courts from doing so in every case. I cannot see how Miller 's dictates are satisfied by the hollow formality to which the majority's holding would reduce the hearing mandated by MCL 769.25(6). And if that is the result, the statutory scheme necessarily violates the "foundational principle" that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." Miller , 567 U.S. at 474, 132 S.Ct. 2455 ; see also Landrum v. State , 192 So.3d 459, 460 (Fla., 2016) (holding that "[e ]ven in a **149 discretionary sentencing scheme , the sentencing court's exercise of discretion before imposing a life sentence must be informed by consideration of the juvenile offender's 'youth and its attendant circumstances' as articulated in Miller and now codified in section 921.1401, Florida Statutes (2014)") (emphasis added).
Finally, for what it is worth, the Miller Court's statement that LWOP sentences for juveniles should be "uncommon" is entitled to some weight in analyzing this issue. Miller , 567 U.S. at 479, 132 S.Ct. 2455. Yes, those statements in Miller were a prediction, or dictum, and not a rule of law. But Montgomery made them harder to shrug off. See Montgomery , 577 U.S. at ----, 136 S.Ct. at 734 (stating that " Miller determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption' ") (quotation marks and citations omitted); id . at ----, 136 S.Ct. at 734 (stating that " Miller did bar life without parole, however, for all but the rarest of juvenile offenders"); id . at ----, 136 S.Ct. at 743 (Scalia, J., dissenting) (asserting that "[i]t is plain as day that the majority is not applying Miller , but rewriting it"); see also, e.g., Veal , 298 Ga. at 702, 784 S.E.2d 403 (characterizing Montgomery as further "explain[ing]" Miller 's requirements, including that "by uncommon , Miller meant exceptionally rare ").[8]
**150 In my view, interpreting the statute as murder-minus renders it constitutionally flawed under the Eighth Amendment. Instead, I believe that "a faithful application of the holding in Miller , as clarified in Montgomery , requires the creation of a presumption against sentencing a juvenile offender to life in prison without the possibility of parole." Commonwealth v. Batts , 640 Pa. 401, 472, 163 A.3d 410, 452 (2017) ;[9] see also Atwell v. State , 197 So.3d 1040, 1050 (Fla., 2016) (invalidating under the *324 Eighth Amendment a defendant's sentence because he "did not receive the type of individualized sentencing consideration Miller requires"). Because a murder-minus interpretation of MCL 769.25 does not allow for such a presumption, I conclude that the majority's interpretation violates Miller .
III. MILLER REQUIRES A HEIGHTENED STANDARD OF REVIEW FOR JUVENILE LWOP SENTENCES
Even if I could agree with the majority that MCL 769.25 is constitutional, in my view Miller requires appellate courts to apply a more searching review to juvenile LWOP sentences than our traditional abuse-of-discretion standard. This is so because the review is of the legality of the sentence; if the sentence is illegal, the court has no discretion to impose it. "[I]n the absence of the sentencing court reaching a conclusion, supported by competent evidence, that the defendant will forever be incorrigible, without any hope for rehabilitation, **151 a life-without-parole sentence imposed on a juvenile is illegal, as it is beyond the court's power to impose." Batts , 163 A.3d at 435.
Whether a juvenile LWOP sentence is a proper exercise of a sentencing judge's discretion therefore is the wrong inquiry; the correct inquiry is whether such a sentence is constitutional under the Eighth Amendment and Miller . We review constitutional questions de novo. Why would we make an exception to that rule here? And other courts have rightly recognized that de novo review of such sentences is appropriate. "[W]e must review the sentencing court's legal conclusion that [the defendant] is eligible to receive a sentence of life without parole pursuant to a de novo standard and plenary scope of review." Id . ; see also Seats , 865 N.W.2d at 553 (stating that "[w]hen a defendant attacks the constitutionality of a sentence, our review is de novo"); Davis , 2018 WY 40, 415 P.3d at 676 (stating that "we review a constitutional challenge to a sentence de novo").
Such a conclusion is consistent with the majority's discussion of the traditional abuse-of-discretion standard and why we apply it to sentencing decisions in the ordinary course. In People v. Babcock , 469 Mich. 247, 268-269, 666 N.W.2d 231 (2003), we observed that "[r]eview de novo is a form of review primarily reserved for questions of law" and that "an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." But a decision whether a particular sentence satisfies constitutional scrutiny under Miller is precisely the sort of question of law to which there is only one correct answer-the sentence is either constitutional or it is not. There is no room for **152 discretion and therefore no reason for an appellate court to defer to the trial court's decision when reviewing the sentence for Eighth Amendment compliance.[10]
As a result, while I disagree with the Hyatt conflict panel's decision to cast the *325 standard of review applicable to juvenile LWOP sentences as a heightened version of the traditional abuse-of-discretion standard, I agree with its bottom line: Appellate courts should apply a less deferential review to juvenile LWOP sentences. I would simply call the standard what it is-de novo review.
IV. CONCLUSION
I respectfully dissent from each of the majority's holdings. I would conclude that MCL 769.25 is unconstitutional because its most natural reading requires a **153 trial court to make factual findings beyond those found by the jury before it can impose an LWOP sentence on a juvenile. I would decline to read the statute not to require such findings before a court can impose an LWOP sentence on a juvenile because I believe such a reading violates the Eighth Amendment as the United States Supreme Court has made plain in Miller and Montgomery . Finally, given that the majority holds the statute constitutional, I also dissent from its conclusion that traditional abuse-of-discretion review applies to juvenile LWOP sentences. Whether the sentence is constitutional, like any constitutional question, requires our de novo review.
Clement, J., took no part in the decision of this case.

The statute at issue in Ring expressly required the finding of an aggravating circumstance before the death penalty could be imposed. Id . at 592, 122 S.Ct. 2428.

The sentencing scheme at issue in Hurst required the jury to render an "advisory sentence" of life imprisonment or death without specifying the factual basis of its recommendation. Although the court had the ultimate authority to impose a sentence of life imprisonment or death, if the court imposed death, it had to set forth its findings in support of that decision. Hurst , 577 U.S. at ----, 136 S.Ct. at 622.

In Carp , 496 Mich. at 491 n. 20, 852 N.W.2d 801, this Court noted Miller 's reference to "judge or jury" and indicated that this
tend[s] to suggest that Miller did not make age or incorrigibility aggravating elements because under Alleyne [v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ] aggravating elements that raise the mandatory minimum sentence "must be submitted to the jury and found beyond a reasonable doubt[.]" However, because Alleyne was decided after Miller , Miller 's reference to individualized sentencing being performed by a "judge or jury" might merely be instructive on the issue but not dispositive. As none of the defendants before this Court asserts that his sentence is deficient because it was not the product of a jury determination, we find it unnecessary to further opine on this issue and leave it to another day to determine whether the individualized sentencing procedures required by Miller must be performed by a jury in light of Alleyne . [Citation and emphasis omitted.]

In Roper v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Court held that the Eighth Amendment forbids imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.

In Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court held that the Eighth Amendment forbids imposition of a sentence of life without the possibility of parole for people who committed nonhomicide offenses when they were under the age of 18.

Judge Beckering , joined by Judge Shapiro , wrote a concurring opinion in which she expressed her view that "a sentence of life without parole for a juvenile offender constitutes cruel or unusual punishment in violation of the Michigan Constitution," even though she recognized that this issue was "unpreserved, scantily briefed, and better left for another day." Id . at 430, 891 N.W.2d 549 ( Beckering , J., concurring). Judge Meter , joined by Judges M. J. Kelly and Riordan , agreed with the majority opinion's conclusion that a judge, not a jury, is to determine whether to sentence a juvenile to life without parole. Id . at 447, 891 N.W.2d 549 ( Meter , J., concurring in part and dissenting in part). However, he dissented from the majority's review of the judge's decision to impose life without parole and its decision to remand for resentencing. Instead, he would have simply affirmed defendant's sentence. Id . at 448-449, 891 N.W.2d 549.

The instant cases are distinguishable from Ring because while the statute at issue in Ring expressly required the finding of an aggravating circumstance before the death penalty could be imposed, MCL 769.25 does not expressly (or otherwise) require the finding of an aggravating circumstance before life without parole can be imposed.

As noted earlier, Carp explained that "[r]ather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, MCL 769.25 now establishes a default sentencing range for individuals who commit first-degree murder before turning 18 years of age" because "[p]ursuant to the new law, absent a motion by the prosecutor seeking a sentence of life without parole, 'the court shall sentence the individual to a term of [years].' " Carp , 496 Mich. at 458, 852 N.W.2d 801, quoting MCL 769.25(9). A term-of-years sentence is only the "default" under MCL 769.25 when the prosecutor does not file a motion seeking a life-without-parole sentence. Once the prosecutor files such a motion, there is no longer any "default" sentence. Instead, the trial court must then consider the Miller factors and any other relevant factors and exercise its discretion by choosing either a term-of-years sentence or a life-without-parole sentence.

Italics added. In addition, MCL 769.25(6) provides that the court "may consider any other criteria relevant to its decision, including the individual's record while incarcerated." (Emphasis added.) Given that "may" is permissive, In re Bail Bond Forfeiture , 496 Mich. 320, 328, 852 N.W.2d 747 (2014), this language clearly does not require the trial court to engage in fact-finding in violation of the Sixth Amendment. Cf. People v. Lockridge , 498 Mich. 358, 364, 870 N.W.2d 502 (2015) (explaining that the statutory sentencing guidelines violate the Sixth Amendment because "the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under Alleyne .") (emphasis altered).

In Apprendi , 530 U.S. at 491 n. 16, 120 S.Ct. 2348, the Court emphasized the important distinction "between facts in aggravation of punishment and facts in mitigation," and it explained:
If facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

Furthermore, the United States Supreme Court does not even view the "mitigating-factor determination" (at least in the context of death penalty cases) to constitute a factual finding. In Kansas v. Carr , 577 U.S. ----, 136 S.Ct. 633, 193 L.Ed.2d 535 (2016), the Court held that mitigating circumstances, unlike aggravating circumstances, do not need to be proven beyond a reasonable doubt. In doing so, it explained that
[w]hether mitigation exists ... is largely a judgment call (or perhaps a value call); what one juror might consider mitigating another might not. And of course the ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy-the quality of which, as we know, is not strained. [Id . at ----, 136 S.Ct. at 642.]
Similarly, in United States v. Gabrion , 719 F.3d 511, 532-533 (C.A. 6, 2013), the Sixth Circuit held that whether the aggravating circumstances outweigh the mitigating circumstances is not a fact that must be proved beyond a reasonable doubt. It explained:
Apprendi findings are binary-whether a particular fact existed or not. [18 USC] 3593(e), in contrast, requires the jury to "consider" whether one type of "factor" "sufficiently outweigh[s]" another so as to "justify" a particular sentence. Those terms-consider, justify, outweigh-reflect a process of assigning weights to competing interests, and then determining, based upon some criterion, which of those interests predominates. The result is one of judgment, of shades of gray; like saying that Beethoven was a better composer than Brahms. Here, the judgment is moral-for the root of "justify" is "just." What § 3593(e) requires, therefore, is not a finding of fact, but a moral judgment. [Id . ]
For the same reasons, a trial court's decision to impose life without parole after considering the mitigating and aggravating circumstances is not a factual finding, but a moral judgment.

This perhaps is the critical point at which we and the dissent disagree. The dissent concludes that because MCL 769.25(7) requires the trial court to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed," the statute necessarily requires the trial court "to find an aggravating circumstance-a fact that increases the sentence beyond that authorized by the jury verdict-before it can impose [a life-without-parole] sentence on a juvenile...." We respectfully disagree. Although the statute requires the trial court to "specify on the record the aggravating and mitigating circumstances considered by the trial court," that does not necessarily mean that the trial court must specify an aggravating circumstance before it can impose a life-without-parole sentence upon a juvenile. Rather, that means simply that if the trial court does consider any aggravating (or mitigating) circumstances, it must specify those circumstances on the record.

As the Court of Appeals dissent in Skinner noted, that the Legislature did not include any burden of proof in the statute "further supports the conclusion that the statute does not require any particular finding of fact." Skinner , 312 Mich. App. at 74, 877 N.W.2d 482 ( Sawyer , J., dissenting). As the dissent explained:
I would suggest that the Legislature did not include a burden of proof out of oversight or a desire to leave it to the courts to fashion one, but because it was unnecessary because the statute does not require anything to be proved. Rather, it only requires consideration of the relevant criteria to guide the trial court in determining the appropriate individualized sentence for the defendant before it. [Id . at 74-75, 877 N.W.2d 482.]

In Blakely , 542 U.S. at 309, 124 S.Ct. 2531, the Court explained:
Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence -and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [Emphasis altered.]
Under Michigan's statutory scheme, in the absence of a finding of an aggravating circumstance, a juvenile does not have a "legal right to a lesser sentence," i.e., a term of years rather than life without parole. Therefore, a judge is not precluded from considering aggravating circumstances in deciding whether to sentence a juvenile to either a term of years or life without parole because both of those sentences are within the range prescribed by Michigan's statutory scheme.

Montgomery , 577 U.S. at ----, 136 S.Ct. at 726, noted that "Miller required that sentencing courts consider a child's diminished culpability and heightened capacity for change before condemning him or her to die in prison." (Emphasis added; quotation marks and citation omitted.) See also id . at ----, 136 S.Ct. at 733 ("Miller requires that before sentencing a juvenile to life without parole, the sentencing judge take into account how children are different, and how those differences counsel against irrevocably sentencing them to lifetime in prison.") (emphasis added; quotation marks and citation omitted). Just as with the similar language in Miller , we do not place too much weight on this language given that Montgomery , as with Miller , was not addressing the Sixth Amendment issue. See note 3 of this opinion.

While the dissent agrees with us that "neither Miller nor Montgomery requires a trial court to make a specific factual finding that the juvenile is 'irreparably corrupt,' " it concludes that those cases require "some additional finding(s)," yet it does not identify what specifically that additional finding is other than that the juvenile's offense must be "unusual enough to warrant [a life-without-parole] sentence...."

Similarly, in Atkins v. Virginia , 536 U.S. 304, 317, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the Court held that the Eighth Amendment bars the imposition of the death penalty on defendants who are intellectually disabled, but it left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." (Quotation marks and citation omitted; alterations in original.) Subsequently, in Schriro v. Smith , 546 U.S. 6, 7, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005), the Court held that "[t]he Ninth Circuit erred in commanding the Arizona courts to conduct a jury trial to resolve Smith's mental retardation claim." Although the Court did not expressly hold that a jury trial is not required, it noted that "Arizona had not even had a chance to apply its chosen procedures when the Ninth Circuit pre-emptively imposed its jury trial condition." Id . at 7-8. State and lower federal courts have held that a jury need not decide whether a defendant is intellectually disabled. See, for example, State v. Agee , 358 Or. 325, 364, 364 P.3d 971 (2015), amended 358 Or 749, 370 P.3d 476 (2016) ("[B]ecause intellectual disability is a fact that operates to reduce rather than to increase the maximum punishment permitted by a verdict of guilt, the Sixth Amendment does not require the fact of intellectual disability to be decided by a jury beyond a reasonable doubt."); Commonwealth v. Bracey , 604 Pa. 459, 474, 986 A.2d 128 (2009) ("[T]here is no Sixth Amendment right to a jury on the question of mental retardation."); State v. Hill , 177 Ohio App. 3d 171, 187, 2008-Ohio-3509, 894 N.E.2d 108 (2008) ("[W]e reject the argument that the Apprendi / Ring line of cases requires the issue of an offender's mental retardation to be decided by a jury under a reasonable-doubt standard."); State v. Johnson , 244 S.W.3d 144, 151 (Mo, 2008) ("The Supreme Court's holding in Ring requiring a jury to find statutory aggravating circumstances beyond a reasonable doubt does not apply to the issue of mental retardation" because "[d]etermining a defendant is mentally retarded is not a finding of fact that increases the potential range of punishment; it is a finding that removes the defendant from consideration of the death penalty."); State v. Grell , 212 Ariz. 516, 526, 135 P.3d 696 (2006) ("Ring does not require that a jury find the absence of mental retardation."); Walker v. True , 399 F.3d 315, 326 (C.A. 4, 2005) (A jury does not have to determine whether a defendant is mentally retarded because "an increase in a defendant's sentence is not predicated on the outcome of the mental retardation determination; only a decrease.") (quotation marks omitted); Head v. Hill , 277 Ga. 255, 258, 587 S.E.2d 613 (2003) ("[T]he absence of mental retardation is not the functional equivalent of an element of an offense such that determining its absence or presence requires a jury trial under Ring ."); In re Johnson , 334 F.3d 403, 405 (C.A. 5, 2003) ("[N]either Ring and Apprendi nor Atkins render the absence of mental retardation the functional equivalent of an element of capital murder which the state must prove beyond a reasonable doubt.").
Also somewhat similarly, in Tison v. Arizona , 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court held that the Eighth Amendment bars the imposition of the death penalty in felony-murder cases unless the defendant himself killed, intended to kill, attempted to kill, or was a major participant in the offense and acted with at least a reckless indifference to human life. In Cabana v. Bullock , 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the Court discussed a case that served as a precursor to Tison , Enmund v. Florida , 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and held that the offender's role in the offense did not concern guilt or innocence and did not establish an element of capital murder that had to be found by a jury. While Cabana was decided before Apprendi , state and lower federal courts since Apprendi have held that the Sixth Amendment does not require that a jury make the Enmund / Tison findings. See, for example, State v. Galindo , 278 Neb 599, 656, 774 N.W.2d 190 (2009) ("Ring [does] not require a jury determination of Enmund - Tison findings" because "the Enmund / Tison determination is a limiting factor, not an enhancing factor.") (quotation marks and citations omitted); State v. Nichols , 219 Ariz. 170, 172, 195 P.3d 207 (2008) ("[T]he Sixth Amendment does not require that a jury, rather than a judge, make Enmund - Tison findings.") (quotation marks and citation omitted). See also 6 LaFave et al., Criminal Procedure (4th ed.), § 26.4(i), pp. 1018-1019 ("So far, lower courts have rejected arguments to equate the factors which as a matter of Eighth Amendment law are required for death eligibility with elements. The rules in Tison and Atkins have instead been treated as defenses to, not elements of, capital murder.").
Finally, as the Court of Appeals explained in Hyatt , 316 Mich. App. at 411-412, 891 N.W.2d 549 :
The consensus in these cases is that when the Eighth Amendment's proportionality requirement has barred imposition of the death penalty because of a certain factor or factors that suggested diminished culpability, the determination of whether those certain factors exist is not one that is subject to a jury determination. Stated differently, the Eighth Amendment prohibitions are considered to be mitigating factors that act as a bar against imposing the statutory maximum penalty, rather than as elements that enhance the maximum possible penalty, and the determination of whether those mitigating factors exist need not, under Apprendi and its progeny, be made by a jury.

MCL 769.25 requires trial courts to consider the Miller factors before imposing life without parole in order to ensure that only those juveniles who are irreparably corrupt are sentenced to life without parole. Whether a juvenile is irreparably corrupt is not a factual finding; instead, it is a moral judgment that is made after considering and weighing the Miller factors. See note 11 of this opinion.

The Court of Appeals in Skinner , 312 Mich. App. at 49, 877 N.W.2d 482, stated:
[I]f, as the prosecution and the Attorney General contend, the "maximum allowable punishment" at the point of defendant's conviction is life without parole, then that sentence would offend the Constitution. Under Miller , a mandatory default sentence for juveniles cannot be life imprisonment without the possibility of parole. Such a sentence would not be an individualized sentence taking into account the factors enumerated in Miller .
Similarly, the dissent contends that "[r]eading the statute as [we do] renders meaningless the individualized sentencing required by Miller by allowing [life without parole] effectively to serve as the default sentence as long as the prosecutor files the motion required under MCL 769.25(2)." However, what the Court of Appeals and the dissent fail to recognize is that Michigan's statutory scheme does not create a mandatory default sentence of life without parole for juveniles. Rather, it authorizes the trial court to sentence a juvenile to life without parole as long as the trial court takes into account the Miller factors. In other words, Michigan's statutory scheme is absolutely consistent with Miller because instead of imposing a mandatory sentence of life without parole, it requires the trial court to impose an individualized sentence by requiring the trial court to consider the factors enumerated in Miller . Therefore, contrary to the dissent's suggestion, our interpretation of MCL 769.25 most certainly does not "flout[ ] the individualized sentencing ... requirement[ ] of Miller ...."

The Supreme Court of Pennsylvania held that although a finding of "permanent incorrigibility" is required, this finding can be made by the trial court because "[a] finding of 'permanent incorrigibility' cannot be said to be an element of the crime committed; it is instead an immutable characteristic of the juvenile offender." Id . at 456.

As Blackwell put it, " '[I]rreparable corruption' is not a factual finding, but merely 'encapsulates the [absence] of youth-based mitigation.' " Id . at 192 (alteration in original).

Judge Meter , joined by Judges M. J. Kelly and Riordan , would not have reversed defendant's sentence and remanded to the trial court for further consideration. Instead, they would have affirmed defendant's sentence of life without parole.

Justice Roberts, joined by Justices Scalia, Thomas, and Alito, referred to this as "the Court's gratuitous prediction." Miller , 567 U.S. at 501, 132 S.Ct. 2455 (Roberts, C.J., dissenting). See also State v. Valencia , 241 Ariz. 206, 212, 386 P.3d 392 (2016) (Bolick, J., concurring) ("We should treat the Court's forecast that irreparable corruption will not be found in the 'vast majority' of cases as speculative and dictum.... Our system's integrity and constitutionality depend not on whether the overall number of sentences of life without parole meted out to youthful murderers are many or few. They depend primarily on whether justice is rendered in individual cases."). Furthermore, it is difficult to understand what particular insights or data the United States Supreme Court, or any other court, would possess concerning the Miller / Montgomery juvenile populations of this state, much less those of all fifty states, that would sustain such a prediction.

Miller 's and Montgomery 's references to "rare" are somewhat analogous to this Court's reference to "exceptional" in People v. Babcock , 469 Mich. 247, 257, 666 N.W.2d 231 (2003). In Babcock , we stated, " 'the Legislature intended "substantial and compelling reasons" to exist only in exceptional cases.' " Id ., quoting People v. Fields , 448 Mich. 58, 68, 528 N.W.2d 176 (1995). Post-Babcock , we certainly did not require trial courts to explicitly find that a defendant's case was "exceptional" before imposing a sentence outside the statutory sentencing guidelines.

Although trial courts are no longer required to articulate substantial and compelling reasons to justify departures, they are still required to articulate "adequate reasons" to justify departures, and such departures are still reviewed for an abuse of discretion. Steanhouse , 500 Mich. at 476, 902 N.W.2d 327.

As discussed earlier and as also recognized by the dissent, the United States Supreme Court expressly left it to the states to adopt procedures to satisfy the requirements of the Eighth Amendment. Where the issue is whether those procedures sufficiently satisfy the requirements of the Eighth Amendment, the de novo standard of review is applicable because that is a question of law. However, contrary to the dissent's position, where the issue pertains to the trial court's ultimate decision between a life-without-parole sentence and a term-of-years sentence, the traditional abuse-of-discretion standard of review is applicable. We are not aware of any other situation in this state in which a trial court's sentencing decision is reviewed de novo, and we see no reason why it should be in this particular situation. As discussed earlier, Miller requires individualized sentences and the trial court is in a better position than an appellate court to carry out this task. And Miller requires the trial court to consider such factors as the defendant's maturity, impetuosity, ability to appreciate risks and consequences, ability to deal with police officers or prosecutors, capacity to assist his own attorneys, and possibility of rehabilitation. The trial court is obviously in a far better position than the appellate court to assess such factors, and thus the latter must review the trial court's consideration of these factors and its ultimate decision whether to impose a life-without-parole or a term-of-years sentence under a deferential abuse-of-discretion standard of review.

Although the Court of Appeals in Hyatt erred by adopting a heightened standard of review with regard to the trial court's ultimate decision to impose a sentence of life without parole, it did correctly hold that "[a]ny fact-finding by the trial court is to be reviewed for clear error" and that "any questions of law are to be reviewed de novo...." Hyatt , 316 Mich. App. at 423, 891 N.W.2d 549.

Defendant Hyatt's application for leave to appeal is otherwise denied.

I use the term "murder-plus" to mean interpreting the statute to require the trial court to find facts beyond those inherent in the jury verdict before it can impose a sentence of life without parole on a juvenile.

I use the term "murder-minus" to mean interpreting the statute to allow the trial court to impose a sentence of life without parole on a juvenile based solely on the jury's verdict, without finding any additional facts, and to ratchet downward to impose a term-of-years sentence.

The Hyatt panel's focus on the motion permitting a prosecutor to seek an LWOP sentence as increasing the maximum is flawed, Hyatt , 316 Mich. App. at 405, 891 N.W.2d 549, because it is the trial court's authority to impose such a sentence that matters. And even if the prosecutor's filing of a motion under MCL 769.25(2) were considered, it would further support the conclusion that the statute violates the Sixth Amendment. The jury verdict alone does not authorize a sentence of LWOP. As conceded by the prosecutor, LWOP is only available if the prosecutor files a motion seeking an enhanced sentence.

Given this statement, I find questionable the majority's assertion that "[w]hether a juvenile is irreparably corrupt is not a factual finding[.]" Ante at 310 n. 18. But I acknowledge that other courts have reached the same conclusion. See, e.g., People v. Blackwell , 3 Cal. App. 5th 166, 192, 194, 207 Cal.Rptr.3d 444 (2016) (concluding that "irreparable corruption" is not a factual finding, but a "moral judgment").

The United States Supreme Court in Montgomery recognized that there might be more than one procedural way to satisfy its dictates and left it to the states to implement. Montgomery , 577 U.S. at ----, 136 S.Ct. at 735 ("That this finding [of incorrigibility] is not required, however, speaks only to the degree of procedure Miller mandated in order to implement its substantive guarantee.... [T]his Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems."). I read the substantive rule of Miller and Montgomery as: whatever label a state puts on the "finding" a court must make as a procedural matter before it can constitutionally sentence a juvenile to LWOP (whether it be "irreparable corruption" or some proxy of that status), the court must make the finding at least cautiously and at most rarely. Id . at ----, 136 S.Ct. at 735 (describing "Miller 's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity"); id . at ----, 136 S.Ct. at 734 ("Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption."). And of course, states can avoid concerns about what procedural protections are enough to satisfy Miller "by permitting juvenile homicide offenders to be considered for parole." Id . at ----, 136 S.Ct. at 736.

Thus, I cannot accept the majority's and the Hyatt panel's conclusion that there is no Sixth Amendment flaw in MCL 769.25 because the Miller factors all involve mitigating factors, which a jury need not find. What Miller and Montgomery require trial courts to do before imposing an LWOP sentence on a juvenile is explain why the juvenile's offense is the unusual one that warrants it; in other words, why is it worse than the typical juvenile offense? See Black's Law Dictionary (7th ed.), p. 236, which defines "aggravating circumstance" as "[a] fact or situation that increases the degree of liability or culpability for a tortious or criminal act"; see also Montgomery , 577 U.S. at ----, 136 S.Ct. at 726 (stating that LWOP is inappropriate "for all but the rarest of children, those whose crimes reflect 'irreparable corruption ' ") (citations omitted; emphasis added). So while Miller may require trial courts to consider the mitigating effects of youth in determining an appropriate sentence generally, perhaps the Eighth Amendment requirement includes a finding of aggravation of some kind, whether it is irreparable corruption or something else.

It would seem hard to dispute that the Legislature created the motion, hearing, and on-the-record findings requirements in MCL 769.25(3), (6), and (7) precisely to satisfy Miller 's dictates for individualized consideration of juveniles convicted of enumerated crimes. The irony that in doing so, it created a Sixth Amendment problem is not lost on me. But this result is still the one that I read the applicable United States Supreme Court precedent to require given this particular statute.

Montgomery 's sharpening of Miller 's requirements also undermines the majority's conclusion that a murder-minus reading of the statute is constitutionally sufficient because it requires sentencing courts to "consider" the Miller factors. Montgomery , 577 U.S. at ----, 136 S.Ct. at 734 (stating that "because Miller determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status-that is, juvenile offenders whose crimes reflect the transient immaturity of youth") (cleaned up). In other words, the Eighth Amendment requires the sentencing court to find some facts about a particular juvenile's crime that distinguish it from the typical juvenile offense before it may impose an LWOP sentence.

Other state supreme courts have similarly concluded that Miller requires a presumption against imposing LWOP on a juvenile offender. See, e.g., Davis v. State , 2018 WY 40, ¶ 45, 415 P.3d 666, 681 (2018), citing State v. Riley , 315 Conn. 637, 655, 110 A.3d 1205 (2015) ; State v. Seats , 865 N.W.2d 545, 555 (Iowa, 2015).

The majority replies by conceding that de novo review applies to questions of law, but denies that a trial court's sentencing decision to impose an LWOP sentence on a juvenile is such a question. That conclusion, frankly, simply ignores that Miller constitutionalized this particular area of law and that Montgomery declared it a substantive, rather than a procedural, rule of law. See Montgomery , 577 U.S. at ----, 136 S.Ct. at 736 (stating that "[t]he Court now holds that Miller announced a substantive rule of constitutional law"); see also id . at ----, 136 S.Ct. at 735 (stating that "[t]he hearing does not replace but rather gives effect to Miller 's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity"). Even the Montgomery primary dissent, albeit begrudgingly, acknowledged this. See id ., 577 U.S. at ----, 136 S.Ct. at 743-744 (Scalia, J., dissenting) (asserting that "the rewriting [of Miller ] has consequences beyond merely making Miller 's procedural guarantee retroactive. If, indeed, a State is categorically prohibited from imposing life without parole on juvenile offenders whose crimes do not 'reflect permanent incorrigibility,'' then even when the procedures that Miller demands are provided the constitutional requirement is not necessarily satisfied. It remains available for the defendant sentenced to life without parole to argue that his crimes did not in fact 'reflect permanent incorrigibility ' ") (emphasis added).