*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEECLIFTON JEROME MOORE,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2022

No. 349584
Kent Circuit Court
LC No. 05-009552-FC

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant, LeeClifton Jerome Moore, appeals as of right the trial court's order continuing defendant's sentence of life imprisonment without the possibility of parole following a resentencing hearing pursuant to *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012). Defendant's sentence stems from his 2006 jury trial conviction of first-degree felony murder, MCL 750.316(1)(b), on the basis of first-degree child abuse, MCL 750.136b(2). We conclude for reasons discussed below that the trial court erred in its application and consideration of several *Miller* factors, and the Michigan Supreme Court's recent holding in *People v Taylor*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 154994); slip op at 11. Given the changes to the legal landscape in this area of the law, Defendant's sentence must be vacated, the matter must be remanded, and the defendant must be resentenced.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant's conviction arises from the 2005 death of two-year-old AC. Defendant, who was 17 years old at the time of the offense, was in a romantic relationship with AC's mother. Defendant admitted to hitting AC with a belt and shaking AC. AC died as a result of the injuries. A jury found defendant guilty of first-degree felony murder, and the court sentenced him to life in prison without the possibility of parole.

Following the United States Supreme Court's decisions in *Miller* and *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), the trial court was tasked with reviewing defendant's sentence. The prosecution requested that defendant be resentenced to life imprisonment without the possibility of parole, asserting that none of the *Miller* factors weighed

in favor of resentencing defendant to a term of years. Defendant argued that he should be resentenced to a term of years, explaining that he had matured while in prison and was now capable of controlling his anger. Following a one-day *Miller* hearing, the trial court again sentenced defendant to life imprisonment without parole.

In February 2020, this Court granted defendant's motion to remand for the trial court to determine whether defendant was denied the effective assistance of counsel at the *Miller* hearing. Following an evidentiary hearing, the court concluded that defendant's counsel was not ineffective and denied defendant's request for a new *Miller* hearing. This appeal followed.

## II. ANALYSIS

### A. BURDEN OF PROOF

Defendant asserts that he is entitled to resentencing because the prosecution has the burden of proving that a juvenile offender is irreparably corrupt. Because the Michigan Supreme Court recently held that the prosecution has the burden to rebut the presumption that a life-without-parole sentence for a juvenile offender is constitutionally disproportionate in *People v Taylor*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 154994); slip op at 11, we agree that defendant is entitled to a remand for resentencing.

In *People v Bennett*, 335 Mich App 409, 413-414; 966 NW2d 768 (2021), this Court explained the process for resentencing a defendant who was sentenced to life imprisonment without the possibility of parole (LWOP) as a juvenile:

> Anticipating that the United States Supreme Court would give *Miller* retroactive effect, Michigan's Legislature designed a system for resentencing all prisoners serving life without parole who were under the age of 18 when they committed the offense. MCL 769.25a. In those cases, the resentencing court must select either life without parole or a term-of-years sentence. Prosecutors seeking imposition of a life-without-parole sentence are obligated to file a motion specifying the grounds for imposing that punishment. The resentencing court then must hold a hearing to consider the juvenile sentencing factors set forth in *Miller* and other relevant information, including the defendant's record while incarcerated. The court is additionally obligated to specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. [Quotation marks and citations omitted.]

In *Taylor*, ___ Mich at ___; slip op at 11, our Supreme Court held that "there is a rebuttable presumption against the imposition of juvenile LWOP sentences in Michigan and that it is the prosecution's burden to overcome this presumption by clear and convincing evidence at a *Miller* hearing." *Taylor*, ___ Mich at ___; slip op at 11. The Court then addressed what exactly a prosecutor must prove at a *Miller* hearing, stating that a prosecutor seeking to have a juvenile offender sentenced to life imprisonment without parole has the burden of overcoming the presumption that life without parole is disproportionate. *Id*. at ___; slip op at 16. The Court explained that "[i]n doing so, the prosecutor must prove facts and circumstances that rebut the presumption against LWOP by the well-known standard of clear and convincing evidence." *Id*. at

___; slip op at 17. Next, the trial court "must consider all the evidence before it and determine whether the presumption has been rebutted in order to impose LWOP." *Id*. at ___; slip op at 17.

Because the trial court did not follow the appropriate framework outlined in *Taylor* concerning the burden of proof at a *Miller* hearing, defendant is entitled to a remand for resentencing.

## B. APPLICATION OF *MILLER* FACTORS

Defendant also asserts that the trial court erred in its application of the *Miller* factors. We agree.

"This Court reviews sentencing decisions for an abuse of discretion." *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292. The trial court's fact-finding is reviewed for clear error and questions of law are reviewed de novo. *Id*. at 137 n 27.

In *Skinner*, our Supreme Court set forth the circumstances, as discussed in *Miller*, that a court should consider in deciding whether to impose a sentence of life imprisonment without parole on a juvenile offender:

> The following are the factors listed in *Miller*: (1) "his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ." [*Skinner*, 502 Mich at 114-115, quoting *Miller*, 567 US at 477-478 (alteration in original).]

"It is undisputed that all of these factors are mitigating factors," and are factors "that 'counsel against irrevocably sentencing [juveniles] to a lifetime in prison.' " *Skinner*, 502 Mich at 115, quoting *Miller*, 567 US at 480. Moreover, "[a] judge or jury must have the opportunity to consider *mitigating* circumstances before imposing the harshest possible penalty for juveniles." *Id*. (quotation marks and citation omitted).

At a *Miller* hearing, the court must consider these factors and any other relevant criteria, "including the individual's record while incarcerated." MCL 769.25(6). When rendering its sentence, the court must explain the "aggravating and mitigating circumstances" that it considered and why it chose the sentence imposed. MCL 769.25(7). Our Supreme Court recently emphasized, "[w]e caution the trial courts to ensure that the *Miller* factors are not used as aggravators." *Taylor*, ___ Mich at ___ n 25; slip op at 20 n 25. "If a particular *Miller* factor does not militate against LWOP, for example, at most that factor will be considered neutral." *Id*. at ___ n 25; slip op at 20 n 25, citing *People v Masalmani*, 505 Mich 1090, 1090 (2020) (McCORMACK,

C.J., dissenting). As CHIEF JUSTICE MCCORMACK has noted: "Abuse of discretion is a deferential standard. But even so, the trial court's sentencing decision must be a reasonable and principled outcome based on 'case-specific detailed factual circumstances.' " *Masalmani*, 505 Mich at 1090 (MCCORMACK, C.J., dissenting), quoting *Skinner*, 502 Mich at 134. Importantly, "*Miller* requires that we start from the premise that every youthful offender possesses these characteristics." *Taylor*, ___ Mich at ___; slip op at 4 (MCCORMACK, C.J., concurring). Here, the trial court's treatment of the *Miller* factors shows that it treated these factors as aggravating rather than mitigating. "That is, the court did not consider them for what they are—circumstances and features common to juvenile offenders generally, consideration of which would lead to reasons *not* to impose the maximum sentence allowed by our federal constitution." *Masalmani*, 505 Mich at 1090 (MCCORMACK, C.J., dissenting); see also *Taylor*, ___ Mich at ___ n 25; slip op at 20 n 25. Therefore, for the reasons explained below, we concluded that the trial court abused its discretion in applying the *Miller* factors.

## 1. CHRONOLOGICAL AGE AND ITS HALLMARK FEATURES

On appeal, defendant first argues that the trial court erroneously considered defendant's age as an aggravating factor. The court found the fact that defendant committed the offense only days before his eighteenth birthday was significant and further concluded that had defendant been 18 years old, *Miller* would not have applied.[1] The trial court's emphasis of and reliance on this fact, apparently concluding it was an aggravating factor, permeated its analysis of the *Miller* factors.

In weighing defendant's "chronological age and its hallmark features," *Miller*, 567 US at 477, the trial court implicitly concluded that defendant's proximity to age 18 favored imposing a sentence of life without the possibility of parole. The court stated: "The defendant at this time, and the Court thinks this is significant, that was only eight days from being 18 years old. If he was 18 years old, *Miller v Alabama* would not even apply."

Although the court recognized the scientific research indicating that a child's prefrontal cortex is not fully developed until their mid-20s, which can lead to "inappropriate decisions" and engaging in reckless behavior, the court did not find that defendant was immature and noted that

---

[1] Our Supreme Court recently held in *People v Parks*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162086); slip op at 35, that "mandatorily subjecting 18-year-old defendants convicted of first-degree murder to a sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution, and thus constitutes unconstitutionally cruel punishment under Const. 1963, art. 1, § 16." (Citations omitted.) The Court concluded that "no meaningful neurological bright line exists between age 17 and age 18; to treat those two classes of defendants differently in our sentencing scheme is disproportionate to the point of being cruel under our Constitution." *Id*. at ___; slip op at 34-35 (quotation marks and citation omitted). The Court further held that "*all* protections afforded by MCL 769.25 fully apply to 18-year-old defendants." *Id*. at ___; slip op at 34-35. Therefore, the trial court's legal conclusion that *Miller* would not apply to an 18-year-old defendant was erroneous.

there had been no testimony concerning defendant's impulsiveness or failure to appreciate risk. The court further found that the Michigan Department of Corrections (MDOC) psychological report did not show any evidence of "major psychological issues,"[2] and noted that defendant made the choice to move out of his family's home and live with his girlfriend who had three children. Ultimately, the court concluded that defendant was operating as an adult making mature decisions. Because the court suggested that defendant's proximity to age 18 and apparent lack of evidence of hallmark features of youth favored imposing life without the possibility of parole, the trial court abused its discretion in applying this factor. See *Taylor*, ___ Mich at ___ n 25; slip op at 20 n 25 (reiterating that *Miller* factors should not be used as aggravators); see also *id.* at ___; slip op at 4 (MCCORMACK, C.J., concurring) ("It is not a juvenile defendant's burden to prove that they were especially immature, impetuous, or risk-seeking. *Miller* requires that we start from the premise that every youthful offender possesses these characteristics.").

## 2. FAMILY AND HOME ENVIRONMENT

Defendant also asserts that the trial court had insufficient evidence to consider the family and home environment factor. We conclude that the trial court also abused its discretion in applying this factor and clearly erred in regards to its findings. Moreover, as discussed earlier, the trial court was not presented with sufficient information regarding this factor.

The court found that defendant "was not from an extremely abusive home environment at all." The trial court also determined that "defendant's ability to extricate himself from his family or home environment if harmful, abusive, brutal or dysfunctional or a negative influence" was not applicable. However, the court appears to have not fully appreciated the severity of abuse suffered by defendant and his home environment. There was evidence presented that Fitch was mean and physically abusive toward both defendant and his mother. There was also evidence that defendant was physically disciplined by his mother with a belt or "switch" and by other family members. Despite recognizing that defendant's mother had been abused, the court found that it was not a situation of "continued abuse" or an environment that defendant had to escape from. The court also discredited the testimony that defendant had been abused. In regards to the testimony by defendant's mother, the court stated that it believed she testified honestly, but questioned the accuracy of the testimony, explaining, "I believe that she certainly has a motive and prejudices [sic] to see her son be removed from prison." The trial court also noted that neither defendant's mother nor father testified in regard to extensive use of alcohol or drugs in the home. However, both defendant and his mother acknowledged that Fitch sold drugs.

Although defendant had previously reported that he had a stable home life and "good" childhood, and denied any abuse in his PSIR, a review of the entire record indicates that defendant

---

[2] Although the psychological report did not indicate that defendant suffered from any "major mental health illnesses," the author explicitly noted that defendant suffered abuse at the hands of his stepfather, presumably Fitch, and that it was possible defendant treated others the way he was treated—with violence. Moreover, defendant appeared to inflict the same type of abuse to the victim of the instant offense—striking the child with a belt and making him march—as Fitch did to defendant when he was a child.

did suffer from abuse and was raised in a turbulent and sometimes violent home. Moreover, the MDOC psychology report clearly noted that defendant had endured abuse throughout his childhood and that it was possible defendant treated others the way he was treated—with violence.

As the United States Supreme Court has recognized, "vulnerability and comparative lack of control over their immediate surroundings mean[s] juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment." *Roper v Simmons*, 543 US 551, 570; 125 S Ct 1183; 161 L Ed 2d 1 (2005). Moreover, as explained, the trial court was not provided with all the relevant evidence in considering this factor, as indicated by the affidavits submitted on appeal and on remand. Considering the entire record, the trial court's findings that this factor weighed in favor a life sentence was clearly erroneous and the court abused its discretion in applying this factor.

### 3. CIRCUMSTANCES OF THE OFFENSE

The third *Miller* factor is "circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him." *Miller*, 567 US at 477. The trial court also appeared to determine that this factor favored the imposition of a life sentence.

The court recounted the grim details of the offense. The trial court found that defendant's crime was particularly heinous, opining that it was the worst murder it had ever seen or read about. The court also noted that defendant admitted to beating AC with a belt and violently shaking him. The court did not believe that any familial and peer pressure affected defendant, and found that defendant acted alone. Moreover, the court emphasized that defendant failed to take responsibility for the offense and rejected defendant's assertions that he did not know or understand the consequences of his violent actions. We note that the trial court appeared to disregard the evidence indicating that defendant inflicted similar injuries to AC as Fitch inflicted upon defendant. Moreover, the record indicates that defendant acknowledged his actions, expressed remorse, and wrote a letter of apology to the victim's family. Nonetheless, it is undisputed that this was a horrendous offense. As this Court has observed:

> [T]he fact that a vile offense occurred is not enough, by itself, to warrant imposition of a life-without-parole sentence. The court must undertake a searching inquiry into the particular juvenile, as well as the particular offense, and make the admittedly difficult decision of determining whether this is the *truly rare juvenile* for whom life without parole is constitutionally proportionate as compared to the more common and constitutionally protected juvenile whose conduct was due to transient immaturity for the reasons addressed by our United States Supreme Court. [*Bennett*, 335 Mich App at 426 (quotation marks and citation omitted; emphasis added).]

As indicated, "[j]uveniles make rash decisions, cannot assess consequences, and are often unable to extricate themselves once criminal situations are set in motion." *Taylor*, ___ Mich at ___ slip op at 7 (MCCORMACK, C.J., concurring), citing *Miller*, 567 US at 478. The trial court did not explicitly address whether defendant had the intent to kill the victim. See *Graham v Florida*, 560 US 48, 69; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (recognizing that a juvenile offender who did

not kill or have an intent to kill has "a twice diminished moral culpability" when compared to "an adult murderer"). Although the court did not clearly err in its finding that defendant acted alone, the court failed to adequately apply and analyze the above considerations to support its determination that defendant was "the rare juvenile offender whose crime reflects irreparable corruption." *Miller*, 567 US at 479-480 (quotation marks and citation omitted); see *Bennett*, 335 Mich App at 426. Therefore, we conclude that the trial court abused its discretion in applying this factor.

## 4. INCOMPETENCIES OF YOUTH

The next *Miller* factor instructs trial courts to consider "the incompetencies associated with youth," *Miller*, 567 US at 477. As the United States Supreme Court has recognized, "the features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings." *Graham*, 560 US at 78. Under this factor, a court should consider whether defendant "might have been charged with, and convicted of a lesser offense if not for the incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorney." *Skinner*, 502 Mich at 115 (Quotation marks, citation, and alteration omitted). The trial court found "nothing on the record that support[ed] that the defendant could not assist his attorney," and noted that defendant's trial counsel visited defendant at least four times. The trial court further explained that there was no plea deal offered because of the nature of the offense.

However, defendant testified that he did not fully understand the adult criminal justice system because his experience was limited to the juvenile system. Defendant also asserted that his trial counsel met with him only three or four times before trial and did not go into depth regarding the trial proceedings. Rather, trial counsel only told defendant of the charges against him. Defendant also did not know whether he was ever offered a plea deal. Moreover, defendant indicated that he did not fully understand the sentence imposed.

The court also considered defendant's prior criminal history. Defendant's prior juvenile criminal record indicates that defendant had possessed marijuana, carried a weapon on school property, and had a history of assault. Defendant had also plead guilty to aggravated assault in 2005, only months before the instant offense. Although defendant explained the circumstances of each of these incidents, the court did not find defendant's explanations to be credible and concluded that defendant tried to "explain[] all of these away, or justifie[d] them as not being his fault."

Again, the trial court appears to have treated this factor as an aggravating factor, weighing in favor of sentencing defendant to life without the possibility of parole, rather than neutral or mitigating. However:

> *Miller* did not suggest that a juvenile offender is more deserving of [life without the possibility of parole] if the offender is better able to participate in their defense. If a defendant's youth hindered their ability to successfully navigate the criminal justice system, that fact is mitigating. If a defendant's youth did not hinder their ability, this factor is neutral. [*Taylor*, ___ Mich at ___; slip op at 8 (MCCORMACK, C.J., concurring) (quotation marks and citation omitted).]

Therefore, we conclude that the court abused its discretion in applying this factor.

## 5. POSSIBILITY OF REHABILITATION

The final *Miller* factor concerns the possibility of rehabilitation. "Deciding that a juvenile offender forever will be a danger to society" requires "making a judgment that he is incorrigible— but incorrigibility is inconsistent with youth." *Miller*, 567 at 472-473 (quotation marks, citation, and alterations omitted). While a sentencing court might "encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and [life without the possibility of parole] is justified," this penalty will be uncommon because of "children's diminished culpability and heightened capacity for change." *Montgomery v Louisiana*, 577 US 190, 208; 136 S Ct 718; 193 L Ed 2d 599 (2016) (quotations marks and citation omitted). "In the usual sense, 'rehabilitation' involves the successful completion of vocational, educational, or counseling programs designed to enable a prisoner to lead a useful life, free from crime, when released." *Bennett*, 335 Mich App at 426.

In this case, the trial court credited defendant for completing the general educational development (GED) exam and more than ten other programs while in prison. The court also found it significant that defendant had not received any misconduct tickets within the previous 36 months at the time of the resentencing hearing. However, the court's main concern related to defendant's failure to accept responsibility.

According to the trial court, defendant tried to explain away his juvenile record, failed to accept his conduct related to AC's death, and denied responsibility for each of his misconducts in prison. As a result, the court believed that defendant remained an extreme danger to society considering that he refused to accept responsibility for even the smallest things he did as a juvenile. Moreover, the court recounted defendant's history of assaults, noting that defendant had committed assaultive offenses when he was a juvenile, that AC's murder was an assaultive crime, and that defendant continued to be assaultive in prison. The court opined that there was no reason to find that defendant was not a danger to society.

The resentencing court's conclusion that this factor was not mitigating rested largely on its belief that defendant had not taken full responsibility for the instant offense and other assaultive conduct. However, such findings did not prove that defendant was "the rare juvenile offender whose crime reflects irreparable corruption," *Miller*, 567 US at 479-480 (quotation marks and citations omitted), or that he exhibited "such irretrievable depravity that rehabilitation is impossible," *Montgomery*, 577 US at 208; see *Taylor*, ___ Mich at ___; slip op at 10 (MCCORMACK, C.J., concurring) (noting that when there is "no evidence that the defendant could *not* be rehabilitated, there is no reason to conclude that the defendant, like the great majority of youths, lacks the capacity to change and mature"). The record indicates that defendant did in fact take responsibility for the instant offense. In addition to admitting to the underlying conduct of the offense, defendant wrote an apology letter to the victim's family, attempted to reach out to the victim's family in 2007 to "right" his wrong, and also acknowledged that he killed AC during the resentencing hearing. The court rejected defendant's assertions that he did not intend to kill the child and concluded that defendant did not fully accept responsibility of the offense. However, the trial court failed to appreciate the mitigating factors. As noted, the sentencing court appeared

to entirely discount defendant's own childhood trauma, neglect and abuse, which although poses a challenge to rehabilitation, is viewed as a mitigating factor. See *Taylor*, ___ Mich at ___; slip op at 10 (MCCORMACK, C.J., concurring).

The trial court found significant that defendant had 29 misconducts while incarcerated and that he had a history of assaultive offenses. Defendant acknowledged and explained his assaultive conduct that occurred both before and while he was incarcerated. However, the trial court appeared to reject defendant's testimony and other evidence regarding the circumstances of the major misconducts and other assaultive conduct. For example, during the resentencing hearing, the court relied on the fact that defendant had been labeled a "homosexual predator," despite the fact that the designation had been removed and evidence existed that, following an investigation, the underlying incident was found likely not to have occurred and the other prisoner who was implicated had been exonerated. Moreover, defendant testified that he pleaded no contest to the incident because he wanted to return to general population, and that he did not understand his plea at the time.

Additionally, although the court found Richard Stapleton, an expert on the MDOC and its records and policies, to be credible at the evidentiary hearing, it appeared to reject Stapleton's testimony. For example, Stapleton explained that defendant had only 11 major misconducts and described defendant's history of misconduct as "lower than average," explaining that prisoners under the age of 26 "engage in far more frequent misconduct" than those over age 26, reasoning that a prisoner's misconduct is related to their behavior, attitude, and level of maturity. Stapleton further testified that defendant's correction record reflected a common pattern for younger offenders, in that "they engaged in misconduct about [six] their mid-20s, and then age out of those misconducts; discontinue committing." Stapleton also testified that the four misconduct tickets for fighting were not predictive evidence of predatory or violent behavior because the nature of the fights "fit the pattern of just very typical acting out overcrowded young males locked up together." Defendant testified that at least two of the fighting incidents were initiated by other prisoners. Stapleton explained that the MDOC has nearly zero tolerance for fighting and allows for only very limited claims of self-defense.

Regarding defendant's participation in programing, defendant testified that his eligibility for programing was limited as a result of his LWOP sentence and that he began participating in programing in 2012. Stapleton explained that, because there are far more pri999soners than programing opportunities, the MDOC has a priority list and prisoners serving life have lowest priority. Nonetheless, defendant successfully completed multiple programs, including anger management, alcoholics anonymous, cognitive restructuring that assists with conflict resolution, and other self-improvement courses. Additionally, defendant had worked previously and currently as a Prisoner Observation Assistant (POA) and handicap aid, assisting and monitoring prisoners with disabilities and other prisoner's in need. Stapleton explained that POA's are "carefully selected by staff," and that defendant's position indicated that MDOC staff see him as maturing and being trustworthy.

Despite the additional testimony by Stapleton during the evidentiary hearing, the trial court concluded that it would not have had any effect on the sentence it imposed. Notably, the prosecution did not present any evidence that contradicted the testimony of defendant and

Stapleton, nor did it introduce any evidence to support its argument that defendant could not be rehabilitated or is "irreparably corrupt."

Therefore, we conclude that the trial court's assessment that defendant remained a danger to society on the basis of his failure to accept responsibility for his crime or his other assaultive behavior was contrary to the record. See *Bennett*, 335 Mich App at 434. Because we remand for defendant to be resentenced, we instruct the trial court to appropriately analyze the *Miller* factors consistent with *Taylor* and this opinion.

We vacate defendant's sentence of life without parole and remand for resentencing. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick