*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EFRAN PAREDES, JR.,
also known as EFREN PAREDES, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2023

No. 359130
Berrien Circuit Court
LC No. 1989-001127-FH

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In 1989, a jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); and armed robbery, MCL 750.529. Defendant was a juvenile at the time of his offenses, and sentenced to life without parole (LWOP) for murder and life for armed robbery. In October 2021, following *Miller*[1] proceedings, the trial court resentenced defendant to LWOP.[2] Defendant appeals as of right. We vacate defendant's sentence and remand for resentencing consistent with this opinion.

In 1989, defendant was convicted of murdering 28-year-old Rick Tetzlaff, an assistant manager at a grocery store where defendant worked as a bagger. The evidence at trial established that defendant acted with premeditation and deliberation. He told friends about his plan to kill Tetzlaff and rob the store, and he enlisted them to act as accomplices. One evening, he went to the store to commit the murder, but he aborted his plan because there were too many people around. Two days later, defendant waited until closing, when he and Tetzlaff were alone in the store. Using the store's PA system, defendant lured Tetzlaff to the back of store, where defendant lay in wait

---

[1] *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

[2] At resentencing, the trial court also entered a stipulated order consolidating defendant's two murder convictions into one count supported by two theories and conditionally dismissing the armed robbery conviction. This portion of the trial court's ruling is not at issue on appeal.

with a gun that he obtained from one of his accomplices. Defendant shot Tetzlaff four times in the head and chest. After the murder, another one of defendant's accomplices, AM, drove defendant home. AM and another of defendant's friends, who was also aware of his murder plans, testified against defendant at trial. Defendant's fingerprints were found on an office cash drawer, to which defendant would not have had access as a bagger. Defendant's stepfather found Tetzlaff's keys in defendant's bedroom and $2,500 in their basement. In 1989, the trial court sentenced defendant to LWOP.

At the time of the murder, defendant was 15 years and 11 months old. Following the Supreme Court's decision in *Miller* and the determination that *Miller* applied retroactively to offenders such as defendant, the prosecutor moved to resentence defendant to LWOP. The trial court held a two-day *Miller* hearing. Among other evidence, the parties presented evidence regarding defendant's conduct while in prison, including his misconduct tickets, his employment with the braille translation program, and his participation in various programs and services. The trial court also heard opinions about defendant's character from members of his family and other supporters.

Following the hearing, the trial court placed a ruling on the record, addressing the *Miller* factors in detail and concluding that a sentence of LWOP was warranted in this case. The trial court acknowledged defendant's youth at the time of the murder, but reviewing all the factors, the trial court nevertheless concluded that defendant's crimes did not reflect the transient immaturities of youth, such as impetuousness or recklessness. The trial court noted that—unlike the youth in *Miller*—there was no trauma in defendant's childhood; defendant came from a stable home with an attentive mother and stepfather, he attended a great school, and he did well in school and extracurricular activities. The crime itself also showed considerable planning and deliberation, and defendant was both the leader in the offense and the gunman. Defendant was intelligent and able to participate in his own defense; there was no possibility of a plea to a lesser offense when, at trial and to this day, defendant has staunchly claimed total innocence despite the ample evidence against him. The trial court considered defendant's conduct in prison since the crime, which included positive achievements as well as misconduct. The trial court questioned the sincerity of defendant's positive activities, many of which took place post-*Miller*, noting that defendant, who was the leader in the plot to murder Tetzlaff, had a history, dating to before prison, of manipulating people and that he appeared interested "in more privileges or access" in prison.[3] In analyzing the *Miller* factors, the trial court specifically concluded that several of the factors actually favored the prosecutor and supported LWOP. Weighing the *Miller* factors and the principle of proportionality, the trial court resentenced defendant to LWOP. Defendant now appeals as of right.

On appeal, defendant argues that the trial court abused its discretion by sentencing defendant to LWOP. According to defendant, the trial court misapplied the *Miller* factors by weighing some factors in favor of LWOP. Defendant also challenges the trial court's factual

---

[3] As an example, the trial court noted that it was through his positive activities and resulting privileges that defendant was able to violate prison rules to have sex with, and impregnate, his wife while in prison.

findings, and defendant asserts that Michigan applies a higher standard to LWOP for juveniles than that set forth in *Miller*.

We review a trial court's decision to sentence a juvenile to LWOP for an abuse of discretion. *People v Taylor*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 154994); slip op at 10. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017) (quotation marks and citation omitted). A trial court also abuses its discretion when it makes an error of law or "operates within an incorrect legal framework." *Id*. (quotation marks and citation omitted). A trial court's factual findings supporting a sentence are reviewed for clear error. *Taylor*, ___ Mich at ___; slip op at 10. Constitutional issues are reviewed de novo. *Id*.

In *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "[4] That is, the Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions," a right which "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Id*. at 469 (quotation marks and citations omitted). These basic constitutional precepts require different treatment of juveniles at sentencing because "juveniles have diminished culpability and greater prospects for reform," making them generally "less deserving of the most severe punishments." *Id*. at 471 (quotation marks and citation omitted). In other words, *Miller* recognized that "LWOP is an excessive sentence for children whose crimes reflect transient immaturity," *Taylor*, ___ Mich at ___; slip op at 10 (quotation marks and citation omitted), rather than "irreparable corruption," *Montgomery v Louisiana*, 577 US 190, 208; 136 S Ct 718; 193 L Ed 2d 599 (2016) (quotation marks and citation omitted). *Miller* did not categorically ban sentences of LWOP for juveniles; nevertheless the Court anticipated that "this harshest possible penalty will be uncommon." *Taylor*, ___ Mich at ___; slip op at 8 (quotation marks and citation omitted).

Because "[y]outh matters in sentencing," *Miller* provided that a sentencing court "must have discretion to consider youth before imposing a life-without-parole sentence . . . ." *Jones v Mississippi*, ___ US ___; 141 S Ct 1307, 1316; 209 L Ed 2d 390 (2021). More specifically, under *Miller*, before sentencing a juvenile to LWOP, the trial court should first consider five factors:

> (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal

---

[4] Later, the Supreme Court concluded that *Miller* applied retroactively to offenders such as defendant. See *Montgomery v Louisiana*, 577 US 190, 208-209; 136 S Ct 718; 193 L Ed 2d 599 (2016).

with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation." [*Taylor*, ___ Mich at ___; slip op at 8 (citation omitted).]

These factors have been incorporated into Michigan's LWOP sentencing scheme under MCL 769.25. *Id.* Recently, in a footnote in *Taylor*, the Michigan Supreme Court also stated that the *Miller* factors are mitigating factors and cannot be used "as aggravators," meaning that "if a particular *Miller* factor does not militate against LWOP," "at most that factor will be considered neutral." *Id.* at ___ n ___; slip op at 20 n 25.

Although the *Miller* factors must be considered, and cannot be used as aggravators, there are no particular facts that must be found by a trial court in order to conclude that a sentence of LWOP is appropriate for a juvenile. *Id.* at ___; slip op at 15. In particular, a trial court need not make a factual finding of a juvenile's "permanent incorrigibility" before imposing an LWOP sentence. *Jones*, ___ US at ___; 141 S Ct at 1318; *People v Skinner*, 502 Mich 89, 128; 917 NW2d 292 (2018). Further, in considering whether to impose a sentence of LWOP for a juvenile, a trial court is not precluded from considering "the traditional objectives of sentencing—punishment, deterrence, protection, retribution, and rehabilitation." *People v Garay*, 506 Mich 936 (2020).[5]

Recently, in *Taylor*, the Supreme Court set forth additional procedures and standards that should be applied to juvenile LWOP proceedings in Michigan under MCL 769.25. Specifically, the Supreme Court determined that, under MCL 769.25, the default sentence for a juvenile is a term of years. *Taylor*, ___ Mich at ___; slip op at 13. The prosecutor may, by filing a motion, seek to have a juvenile sentenced to LWOP. *Id.* at ___; slip op at 13-14. However, as the moving party, the prosecutor bears "the burden and risk of nonpersuasion at the *Miller* hearing." *Id.* at ___; slip op at 14.

Within this framework, the *Miller* proceedings are "not comparable to an ordinary sentencing hearing in which neither the prosecutor nor the defendant generally bears any particular burden." *Id.* at ___; slip op at 14. Instead, the prosecutor bears the burden of overcoming a presumption that "LWOP is disproportionate." *Id.* at ___; slip op at 16. The prosecutor must "prove facts and circumstances that rebut" this presumption by clear and convincing evidence. *Id.* at ___; slip op at 17. It remains true, however, that there is no particular fact—such as irreparable incorrigibility—that must be shown to warrant a LWOP sentence. *Id.* at ___; slip op at 15-16. Further, neither party bears any particular burden of proof with respect to the *Miller* factors; "the *Miller* factors are simply to be 'considered' and the trial court is to make pertinent findings of fact, but there is no burden of proof associated with those particular considerations." *Id.* at ___ n ___; slip op at 14 n 17. Ultimately, the trial court is charged with considering "all the evidence before

---

[5] Reliance on "other criteria to the exclusion of, or without proper consideration of," the *Miller* factors would constitute an abuse of discretion, but "mere consideration of the traditional objectives of sentencing or other factors is not, *per se*, an error of law." *Garay*, 506 Mich at 936.

it" to "determine whether the presumption has been rebutted in order to impose LWOP."[6] *Id.* at ___; slip op at 17. "This is an exercise in discretion, not a fact-finding mission." *Id.*

In *Taylor*, when conducting the *Miller* resentencing in that case, the trial court did not operate within the framework set forth by the Court in *Taylor*, and for this reason, the Supreme Court concluded that the defendant was entitled to resentencing with the trial court implementing the *Taylor* procedures.[7] *Id.* at ___, ___; slip op at 2, 19-20. Because another resentencing was required, the *Taylor* Court found it unnecessary to address the specifics of the trial court's "use of the *Miller* factors" at the previous hearing. *Id.* at ___ n ___; slip op at 20 n 25.

Turning to the facts of this case, the *Miller* proceedings occurred before the Supreme Court issued its decision in *Taylor*. As a result, the trial court—and the parties—failed to operate within the framework set forth in *Taylor*. For example, the prosecutor specifically asserted in the trial court that a *Miller* resentencing was, in terms of the burden of proof, like an ordinary sentencing at which neither party bore any particular burden. Defense counsel similarly stated during oral arguments in the trial court that there was "no burden of proof." Consistently, the trial court did not place a burden on the prosecutor to rebut, by clear and convincing evidence, that LWOP was a disproportionate sentence. Further, like the trial court in *Taylor*, the trial court in this case treated some of the *Miller* factors—that did not militate in defendant's favor—as favoring LWOP, which *Taylor* now instructs is improper. See *id.* at ___ n ___; slip op at 20 n 25. At oral argument, the prosecution conceded that the trial court erred, and that, in light of *Taylor*, this case needed to be remanded for resentencing. By operating in the wrong legal framework, the trial court abused its discretion, and the appropriate remedy is to remand for a *Miller* resentencing involving the implementation of the new *Taylor* framework. See *id.* at ___; slip op at 2, 19-20. In these circumstances, it would also be premature to consider defendant's specific fact-finding arguments related to the trial court's analysis of the *Miller* factors. See *id.* at ___ n ___; slip op at 20 n 25.

Finally, we note that defendant asks that if the case is remanded, it be remanded to a new judge. Defendant fails to include this issue in his statement of questions presented, meaning that it has not been properly presented for our review, and it need not be considered. See MCR 7.212(C)(5); *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). In any event, defendant's request for a new judge is without merit. To determine whether resentencing should occur before a different judge, this Court considers:

---

[6] Even if the presumption that LWOP is disproportionate is rebutted, the trial court "is not obligated to impose LWOP." *Taylor*, ___ Mich at ___ n ___; slip op at 17 n 22.

[7] In *Taylor*, the defendant was convicted of felony murder as an aider and abettor, and there was also a question whether LWOP for a juvenile convicted of felony murder—without the premeditated and deliberate intent to kill—constituted cruel or unusual punishment. This Court did not address this issue in its original opinion. Consequently, before remanding to the trial court to implement the new *Taylor* procedures, the Supreme Court remanded to this Court for consideration of the defendant's felony-murder argument. *Taylor*, ___ Mich at ___, ___; slip op at 2, 20. However, the resolution of these felony-murder issues in *Taylor* has no potential effect on the current case in which defendant acted with the premeditated intent to kill.

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citations omitted).]

In *Hill*, for example, we rejected the defendant's argument that a new judge should conduct the resentencing when "the trial court's errors involved questions of law," and "[t]here is no indication, as defendant asserts, that the original trial judge would have substantial difficulty in setting aside his previously expressed views." *Id*.

Likewise, in this case, the trial court erred by failing to apply the *Taylor* framework and by treating *Miller* factors as aggravating circumstances. But such errors of law do not constitute grounds for remanding to a new judge, see *id*., particularly when, as in this case, the legal standards at issue were unsettled and the framework the trial court should have applied was announced *after* the proceedings in this case. See *Taylor*, ___ Mich at ___; slip op 1 (stating the Court's intent to "provide much-needed guidance to criminal defendants, prosecutors, and trial courts on the proper procedure" for juvenile LWOP sentencings). Nothing in the trial court's comments during the *Miller* resentencing proceedings suggest that the trial court will be unable or unwilling to apply the framework from *Taylor* or that the trial court will have substantial difficulty setting aside any previously expressed views. See *Hill*, 221 Mich App at 398. Further, reassignment would involve waste and duplication that is simply not necessary to preserve the appearance of fairness. See *id*. For these reasons, defendant's request for a new judge on remand is denied.

Vacated and remanded for resentencing under the *Taylor* framework consistent with this opinion. We retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

# Court of Appeals, State of Michigan

## ORDER

Michael J. Kelly
Presiding Judge

People of MI v Efran Paredes Jr

Kathleen Jansen

Docket No.    359130

LC No.        1989-001127-FH

Thomas C. Cameron
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall be completed within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, this matter is vacated and remanded for resentencing under the *Taylor* framework.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 16, 2023
Date

_____
Chief Clerk